THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES WRIGHT, Defendant-Appellant.

Second District   No. 80-697

Opinion filed March 29, 1982.

Allan J. Marco, of Marco and Mannina, of Downers Grove, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE VAN DEUSEN delivered the opinion of the court:

The defendant, James Wright, appeals from a judgment finding him guilty of bribery (Ill. Rev. Stat. 1977, ch. 38, par. 33—1(d)) and official misconduct (Ill. Rev. Stat. 1977, ch. 38, par. 33—3(d)), and, for the offense of bribery, sentencing him to four years probation and imposing a $5,000 fine.

In February and March of 1979, the Secretary of State's Office conducted an investigation of the Lombard driver's license facility. As a part of the investigation a private investigator named DeArmas posed as an employer of illegal aliens, and contacted a man named Luis Rodriguez. DeArmas told Rodriguez that he had an illegal alien named Gonzales who needed a driver's license. Rodriguez agreed to aid DeArmas. Early on the morning of March 29, 1979, DeArmas and Investigator Aguilera from the Secretary of State's Office met with Rodriguez. Aguilera, who had obtained phony identification in the name of Gonzales and $128 in powdered money, was introduced to Rodriguez as Luis Gonzales, an illegal alien from Guatemala.

The group traveled to the Lombard facility. There Rodriguez introduced Aguilera to the defendant James Wright, a supervisor at the Lombard facility. After taking several tests, and attending several meetings and discussions with the defendant, Aguilera, still posing as an illegal alien, was given a driver's license. Before leaving the facility and pursuant to directions given by Rodriguez, Aguilera gave the defendant $50 in

marked bills. The defendant slipped the $50 in his pocket. Shortly thereafter, he was arrested, the money was recovered, and the defendant was charged with bribery and official misconduct.

The first trial against the defendant resulted in a mistrial. Prior to the commencement of the second trial, defendant filed a motion to dismiss the charges pursuant to section 114—1(a)(2) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—1(a)(2)) and section 3—4(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 3—4(a)(3)). As a basis for the motion, the defendant contended that in the first trial, the prosecutor was guilty of overreaching by asking a witness a grossly inappropriate question, which provoked the mistrial.

Upon written motion of the defendant, section 114—1(a)(2) authorizes the dismissal of an indictment, information or complaint on the ground that the prosecution is barred by sections 3—3 through 3—8 of the Criminal Code of 1961. (Ill. Rev. Stat. 1979, ch. 38, par. 114—1(a)(2).) Section 3—4(a)(3) states as follows:

"(a) A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if such former prosecution:

* * *

(3) Was terminated improperly after the jury was impaneled and sworn * * *." Ill. Rev. Stat. 1979, ch. 38, par. 3—4(a)(3).

■■■ Under these provisions, the defendant's motion should be granted only if the mistrial is improperly granted. Generally, if the defendant requests the mistrial and consents to the mistrial, he can hardly claim that the mistrial was improperly granted. (See *People v. Cummings* (1977), 47 Ill. App. 3d 578, 581.) Here, the defendant made the motion for the mistrial and consented to the granting of the motion. Such a motion is deemed to be a deliberate election on the defendant's part to forgo his right to have his guilt or innocence determined before the first trier of fact. (*United States v. Scott* (1978), 437 U.S. 82, 93, 57 L. Ed. 2d 65, 76, 98 S. Ct. 2187, 2189.) If the defendant's request for a mistrial is precipitated by prosecutorial error, retrial is permissible. (*People v. Pendleton* (1979), 75 Ill. App. 3d 580, 593.) Because of the complexities and dynamics of the trial itself, some prosecutorial error will be inevitable; if, however, the mistrial is attributable to prosecutorial overreaching, retrial is forbidden. *People v. Pendleton* (1979), 75 Ill. App. 3d 580, 593.

In *Pendleton*, prosecutorial overreaching is defined as misconduct "which is specifically designed to provoke a mistrial in order to secure a second—and perhaps more favorable—opportunity to convict the accused [citations]; or * * * which is motivated by bad faith or undertaken to harass or prejudice the accused [citations]." (75 Ill. App. 3d 580, 593.) A

mistrial which is necessitated by prosecutorial overreaching or impropriety designed to avoid an acquittal may well bar reprosecution. *People v. Handley* (1972), 51 Ill. 2d 229, 235.

Here, the mistrial resulted from the testimony of a State's witness, Aguilera. Previously, the trial court had ruled that any testimony regarding a bribe accepted by a road test examiner would not be admissible. During his testimony, Investigator Aguilera, nonetheless, mentioned recovering money from another Secretary of State employee. The trial court, being fully aware of all the circumstances, determined that the mistrial was not the result of the prosecutor asking: "Then what, if anything did you do?" but, rather, the result of the answer: "Well, in the meantime I left the room and recontacted DeArmas, and told him that we have to go outside and recover the money from the * * * other employee of the Secretary of State." The court specifically noted that this witness had a tendency to volunteer answers and to go beyond the scope of the question. In the present case, the trial court correctly determined that the prosecutor was not guilty of overreaching and did not err in denying defendant's motion to dismiss the charges.

■■ The defendant also contends that the State failed to prove him guilty of either bribery or official misconduct beyond a reasonable doubt. Under section 33—1(d) of the Criminal Code of 1961, a person commits bribery when:

> "He receives, retains or agrees to accept any property or personal advantage which he is not authorized by law to accept knowing that such property or personal advantage was promised or tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer, * * *." (Ill. Rev. Stat. 1979, ch. 38, par. 33—1(d).)

Defendant asserts that proof of his acceptance of the money is insufficient to prove him guilty of bribery; the State must also prove that in exchange for the money, the defendant committed an illegal act. The language of the statute, however, does not require the performance of an illegal act. The statute requires only that the defendant received, retained or agreed to accept the money knowing that it was offered with the intent that it influence the defendant as a public officer in the performance of an official act. See *People v. Herron* (1979), 76 Ill. App. 3d 437.

The defendant asserts that because he accepted the money after the license issued, the money was not intended to influence the performance of his duties. According to Aguilera's testimony, however, Rodriguez told Aguilera that upon the receipt of his license, Aguilera was to give Wright, the "main man," $50. Although the money was not actually received by the defendant until after Aguilera had received his driver's license, there

is ample evidence in the record to support a finding that Aguilera gave the money to the defendant pursuant to a pre-arranged plan and that the defendant was well aware that the money was in payment for having influenced him in the performance of official acts.

The case cited by the defendant, *People v. Jordan* (1973), 15 Ill. App. 3d 672, is distinguishable from the case at bar. In that case, an ambulance was called to the scene of an accident. Upon reaching the scene, the driver of the ambulance approached an officer and "slipped" him a $10 bill. There was no evidence, however, that the officer in his official capacity had done anything to warrant the receipt of the money. There was no evidence that the officer summoned that particular ambulance, and most important there was no evidence that the officer accepted the money knowing that the driver tendered it to him with the intent to influence his performance of his duty. The appellate court held that the proof of the mere acceptance of the money was insufficient.

Here, there is adequate evidence that the defendant, in his official capacity, provided Aguilera with services which may have warranted receipt of the $50. It was established that March 29, 1979, was a very busy day for the Lombard facility. However, even with approximately 1000 other applications being processed, the defendant, one of only three supervisors, found time to facilitate each step of Aguilera's licensing process.

The usual procedure at the facility was first to present two pieces of identification to a clerk at the application counter. If the clerk had any questions about the pieces of identification, he would show them to one of the three supervisors. Here, that step was avoided. After Rodriguez met with Wright, he personally introduced Aguilera to the "main man," Wright. Wright examined the manufactured identification and without any further questions or investigation approved them. If a supervisor approved of the identification, no further questions were asked and the application could be completed.

Wright further assured Aguilera that he would have a "nice" examiner give him his road test. Finally, Aguilera testified that Wright accepted the $50 and agreed to aid Aguilera's friends in a similar manner.

The trial judge specifically found that the investigators, Aguilera and DeArmas, were unimpeached and their testimony was very convincing. He also found that the defendant's testimony was not very credible. In a bench trial, the credibility of the witnesses and the weight to be given to their testimony is to be decided by the trial court, and its judgment should not be set aside unless the proof is so unsatisfactory as to cause a reasonable doubt of guilt to appear. (*People v. Herron* (1979), 76 Ill. App. 3d 437, 440.) The evidence here is not so unsatisfactory, rather it establishes the defendant's guilt beyond a reasonable doubt of the offense of bribery.

Under section 33—3(d) of the Criminal Code of 1961, a public officer or employee commits official misconduct when, in his official capacity, he "[s]olicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law." (Ill. Rev. Stat. 1979, ch. 38, par. 33—3(d).) Under this provision, accepting an unauthorized reward for the performance of an act in his official capacity is official misconduct.

■■ In this case, the defendant, Wright, as supervisor, should have been aware of an official regulation that prohibited the acceptance of a gratuity. He accepted and pocketed the unauthorized money offered by Aguilera. It can be inferred that the money was meant to be a reward for Wright's personalized attention given to Aguilera during the testing procedure. There is no doubt that as Wright guided Aguilera through the testing procedure he was acting in his official capacity. The fact that the money was received after Wright had guided Aguilera through the licensing process appears to be irrelevant. (See *People v. Bouse* (1977), 46 Ill. App. 3d 465.) The trial court did not err in finding the defendant guilty of official misconduct.

■■■ Defendant next contends that the trial court erred in admitting the hearsay statements of Luis Rodriguez as declarations of a co-conspirator. Declaration of co-conspirators are admissible against all conspirators upon an independent, *prima facie* evidentiary showing of a conspiracy or a joint venture between the declarant and the defendant, insofar as such declarations are made in furtherance of and during the pendency of the conspiracy. (*People v. Goodman* (1980), 81 Ill. 2d 278, 283.) In the present case, the defendant contends that there was insufficient independent evidence of a conspiracy between Rodriguez and Wright to justify admission of the statements.

In support of this contention the defendant cites *People v. McChristian* (1974), 18 Ill. App. 3d 87. Initially, it should be noted that *McChristian* was affirmed in *People v. Bailey* (1975), 60 Ill. 2d 37. Secondly, *McChristian* involved the State's failure to prove beyond a reasonable doubt that the defendant had committed conspiracy to commit murder. *McChristian* did not involve the establishment of a *prima facie* case of conspiracy in order to permit the admission into evidence of a declaration of a co-conspirator.

To establish such a *prima facie* case of conspiracy, there must be "sufficient evidence of an apparent concert of action" between Rodriguez and Wright. (*People v. Jaffe* (1978), 64 Ill. App. 3d 831, 835.) Here, it is unrebutted that Rodriguez was asked to facilitate an illegal alien named Gonzales in obtaining a driver's license. Aguilera, posing as Gonzales, gave $20 to Rodriguez. Upon reaching the Lombard facility, Rodriguez went to the defendant's office. Later, he introduced the defendant to

Aguilera. The defendant okayed Aguilera's identification before it was presented to an employee at the application counter. The defendant, a supervisor in a facility which handles approximately 1000 applications a day, took a step-by-step interest in Aguilera's progress through the licensing procedure. The defendant accepted an unauthorized payment of $50 from Aguilera.

The State also introduced other independent evidence of a conspiracy. Wright assured Aguilera that he would get a "nice" examiner for the road test. Wright accepted Aguilera's offer to be a go-between, like Rodriguez, and to bring in other Latino persons for similar treatment. There was sufficient independent evidence of an apparent concert of action to justify the admission of the declarations of Rodriguez. See *People v. Jaffe* (1978), 64 Ill. App. 3d 831; *People v. Olmos* (1979), 77 Ill. App. 3d 287.

Defendant also asserts that the State's failure to provide defendant with certain discovery was contrary to due process of law. Prior to and during the trial, the defendant requested that the State produce the identification used by Aguilera, and some notes taken by an investigator named John Rotunno. Defendant was permitted to examine Rotunno in chambers with regard to the notes that he had taken during an interview with Rodriguez. Rotunno, who had appeared before the grand jury in the instant case, testified under oath that his testimony before the grand jury was the sum and substance of the notes he had taken. Mr. Rotunno also testified that he received several requests to look for the notes, and although he had looked for them on four or five occasions, he had not been able to find them.

The defendant also recalled DeArmas, who testified that the two pieces of identification used during the investigation had been returned to him. He stated that he had been asked to produce the pieces of identification but that he was unable to obtain the identification because, pursuant to the usual office practice, he had destroyed them. He testified that within a month after the investigation, he disposed of the cards probably by shredding them or ripping them. It was the general practice of his private agency to destroy manufactured identification so that it could not be abused. He testified that he had not been instructed by anyone either from the State's Attorney's office or from the Secretary of State's office to destroy the pieces of identification.

■■ Although the defendant contends that the State's failure to produce these items was a denial of due process, he cites no law in support of his position. In *People v. Walker* (1974), 21 Ill. App. 3d 202, 205, cited by the State, it was stated that both *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and Supreme Court Rule 412(c) (73 Ill. 2d R. 412(c)) require the State to disclose any material within its possession which tends to negate the guilt of the accused. Here, the items were not in

the State's possession. The State attempted, but was unable, to obtain the requested items. The defendant has not cited any case or rule holding that the State's inability to obtain evidence requested by the defendant denies the defendant his right to due process. This contention is without merit.

Finally, the defendant contends that in light of his poor physical health and his recent adjudication of bankruptcy, the $5,000 fine with a minimum of $1,000 payment due each year of probation is excessive, and "serves no purpose except to further demoralize this family."

Under section 5—9—1(c)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—9—1(c)(1)), when determining the amount of a fine and the method of payment, the court shall consider "the financial resources and future ability of the offender to pay the fine." At the sentencing hearing, the trial court indicated that he had read the presentence report, and had considered the defendant's employment and financial situation when determining the amount of the fine.

The defendant has not made the presentence report a part of the record on appeal, and there is no indication in the record that the defendant is unable to be profitably employed and unable to pay the $1,000 a year in the future. There was no indication that his health affected his employment possibilities, nor is there any other evidence in the record on appeal to indicate that the defendant is unemployable.

■■ In light of the seriousness of the charges, the granting of probation to the defendant, the defendant's past experience and apparent employability, and the statutory provisions which allow for future modification of the fine, the imposition of a $5,000 fine was not an abuse of the trial court's discretion.

The judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD, P. J., and LINDBERG, J., concur.