THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LINDA SHELTON, Defendant-Appellant.

First District (3rd Division)   No. 1—90—1233

Opinion filed August 11, 1993.—Rehearing denied September 28, 1993.

194

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Randall Roberts, and Brian Clauss, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a bench trial, defendant, Linda Shelton, was found guilty of possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)), bribery (Ill. Rev. Stat. 1987, ch. 38, par. 33—1(e)), and official misconduct (Ill. Rev. Stat. 1987, ch. 38, par. 33—3(b)). Defendant was sentenced to concurrent terms of 12 years for possession with intent to deliver a controlled substance, seven years for bribery and five years for official misconduct. We affirm in part and vacate in part.

The issues before this court for review are (1) whether the trial court erred in failing to obtain a waiver of defendant's constitutional right to testify; (2) whether the State failed to prove beyond a reasonable doubt that defendant was guilty of possession of a controlled substance with intent to deliver, bribery and official misconduct beyond a reasonable doubt; (3) whether this cause must be remanded for a new sentencing hearing on the basis that the trial court erred in sentencing defendant pursuant to the one-act-one-crime doctrine, since a single act was the basis for defendant's sentence for two counts of bribery, and three counts of official misconduct, because another single act formed the basis for defendant's sentence for two more counts of bribery, and because defendant's sentence for six counts of official misconduct was based upon the same act as the sentences for possession of a controlled substance with intent to deliver; (4) whether defendant is entitled to a new sentencing hearing on the basis that she was wrongly penalized for inmate overcrowding at the Cook County jail; and (5) whether defendant's sentences were excessive.

Defendant worked as a guard at the Cook County jail from May of 1985 through July of 1988. On December 11, 1987, defendant was arrested and charged with official misconduct, bribery and intent to deliver controlled and look-alike substances.

Agents James Kizart and Tommy Wofford testified for the State. Agent Kizart testified that he had been an Illinois State Police undercover agent for approximately 14 years. Agent Kizart further testified that the following events occurred just prior to defendant's arrest. Agent Kizart had his initial contact with defendant at approximately 9 p.m. on November 24, 1987, when he returned a page and she answered the telephone. During the telephone conversation, defendant

identified herself as "Linda" and stated that she was calling to make arrangements to pick up a package for "Melvin." Agent Kizart recalled that defendant told him she was a guard at the Cook County jail and that she wanted to deliver the package during her shift. Defendant then asked Agent Kizart if she could pick up the package that evening so that she would not be late to work. Agent Kizart told defendant that he would deliver the package to her the next day.

Agent Kizart telephoned defendant at approximately 11 a.m. on November 25, 1988, at which time he told her that he was ready to deliver the package. They agreed to meet outside of a Kentucky Fried Chicken restaurant located at 75th Street and South Lafayette in Chicago, Illinois, around noon. Defendant told Agent Kizart that she would be driving an orange and white Oldsmobile Cutlass. Defendant also inquired about the contents of the package she would be receiving and Agent Kizart told her that the package would contain .5 ounce of cocaine. The package to be used actually contained the substance aspertimine, an artificial sweetener, and was labeled "Mike½O."

Agent Kizart then went to the Kentucky Fried Chicken franchise at noon on November 25, 1988, where he gave defendant the package. Defendant asked Agent Kizart if the package contained heroin. Agent Kizart told defendant that the package contained cocaine. Agent Kizart also gave defendant $100 for herself and $50 for Melvin. Defendant put the money and the package in her pocket.

Agent Kizart then offered defendant $500 to serve as an escort when he made drug deliveries. Defendant agreed to serve as his escort and asked him if he was a drug dealer. Agent Kizart told defendant that he was a drug dealer. Defendant then asked him how much cocaine she could purchase from him for $500. Agent Kizart told defendant that he only dealt in ounce amounts which normally ran between $900 and $1,200 per ounce; however, he agreed to sell her cocaine for $600 an ounce. Defendant asked Agent Kizart if he offered her a price reduction because of her "badge" and Agent Kizart replied in the affirmative.

Agent Kizart then inquired as to when Melvin would receive the drugs and defendant stated that she would personally deliver them between 4 p.m. and 5 p.m. Before exiting the car, Agent Kizart told defendant that he would contact her in the coming weeks in order to orchestrate another drug delivery to Melvin. Defendant said "okay" and Agent Kizart got out of the car at approximately 12:10 p.m. at which time he observed and memorized defendant's license plate number. Upon returning to his squad car, he researched the number in his

portable computer database and discovered that the license number was registered to defendant.

Agent Kizart telephoned defendant on the evening of November 28, 1987. Defendant told him that some men in a blue car stopped her and stole her badge, her gun and the drugs. Agent Kizart told defendant that nothing could be done about the badge or the gun but that she should not be concerned about the drugs because he gave her the package in order to determine whether or not she could really smuggle drugs into the Cook County jail. Agent Kizart then promised defendant that he would give her another package for Melvin.

On December 9, 1987, Agent Kizart obtained reversed role authorization, a consent to overhear and two crime-lab-prepared packages of cocaine. Telephone conversations between defendant and Agent Kizart were hereinafter recorded. Agent Kizart telephoned defendant later on that same day and told her that he wanted to give her more drugs to take to Melvin. Defendant was pleased. On December 10, 1987, Agent Kizart called defendant again to set up another appointment to meet at the same parking lot where they met before, at approximately 2 p.m. on the following day.

Agent Kizart received an unexpected page from defendant shortly after midnight on December 11, 1987. She wanted the agent to give her the cocaine so that she would be able to deliver the drugs later during the day. Defendant then told the agent that she had previously delivered drugs to numerous inmates, including Melvin. She also asked the agent to bring her some cocaine for her own personal use.

Agent Kizart called defendant later on December 11, 1987, from a pay telephone and verified the scheduled 2 p.m. meeting. The agent pulled into the Kentucky Fried Chicken parking lot at 75th and Lafayette around 1:55 p.m. and saw defendant standing in the lot. Agent Kizart parked and defendant got into his car. The agent gave defendant a package containing 16.3 grams of crime-lab-prepared cocaine and a second package containing 27.5 grams of a crime-lab-prepared look-alike drug for defendant herself. Agent Kizart also gave defendant $100 in prerecorded funds.

During the conversation in the car, defendant admitted to having smoked cocaine and delivered drugs to someone named Tony Rome. The agent told defendant that he would give her cocaine and money for any referrals of cocaine purchasers. She again stated that she had previously delivered drugs to Melvin in the Cook County jail.

Defendant and Agent Kizart exited the car and police officers from a nearby surveillance unit arrested defendant. The packages that defendant obtained from Agent Kizart were found in her under-

garments and the $100 in prerecorded funds were found in her pocket.

After laying a foundation, the State played tape recordings of four conversations between Agent Kizart and defendant. The State presented the tapes and tape transcripts to be admitted into evidence. Defendant objected to the admission of the transcripts. The court, however, admitted the transcripts into evidence. The State rested.

Following the State's case, defendant moved for a directed finding. The judge asked the prosecution if there was any evidence that Melvin existed and that he was actually an inmate in the Cook County jail. When the State argued that there was a reference to Agent Kizart's understanding that Melvin was an inmate, the judge reminded the State that she had not seen any concrete evidence that Melvin was an inmate. The State then referred to a comment in the transcript referring to Melvin's "wing" after which the court replied that Melvin could be in the hospital. The prosecutor then characterized the judge's comment as being "hypertechnical" and argued that defendant's state of mind at the time of the crimes could be established through Agent Kizart. Following extensive argument, defendant's motion for a directed verdict was granted for the one count alleging possession of a look-alike substance and denied on all others. The court made the following statement when ruling on the motion:

> "THE COURT: At this point, again looking in the light most favorable to the State, I'm not going to grant it as to any of the other counts. I'm going to give the benefit of the doubt. I have some questions in my mind, but looking in the light most favorable to the State I will come down on the side of the State. I do have some questions, as indicated, however, they are not such at this point that I would grant a motion for directed finding as to the other counts."

The case was continued from January 19, 1990, until March 27, 1990.

Ultimately, the trial court found defendant guilty of possession of a controlled substance with intent to deliver, bribery and official misconduct. While discussing the evidence against defendant, the trial judge made the following statement:

> "THE COURT: It was clear from the testimony that Melvin was an inmate in the Cook County Jail and that [defendant] was aware and was readily participating in and had original contact with the agent with the idea of getting something to take in to Melvin."

When sentencing defendant, the trial judge stated that it was "beyond her" to understand why a person in a position of public trust

would take contraband into Cook County jail. The court also noted that the jail was crowded and analogized defendant's act to throwing a match into a keg of gunpowder. Defendant was then sentenced to concurrent terms of 12, 7 and 5 years in the Illinois Department of Corrections. Defendant now appeals.

First, defendant contends that her convictions must be reversed and her cause remanded because she was supposed to testify and the record does not contain any written or oral waiver of her constitutional right to testify. Defendant further argues that the trial court should have informed her of her right to testify, *sua sponte*, so that she could have made a knowing and intelligent waiver of said right. Initially, the State maintains that this issue has been waived. In the alternative, the State argues that the trial court has no duty to inform a defendant of her right to testify, *sua sponte*, and that there is no law requiring that a defendant's waiver of his right to testify be incorporated in the record. We agree.

■ A party waives his right to appellate review of an alleged error made during trial unless he preserves said right by objecting to the alleged impropriety in a timely manner and by mentioning the specific objection in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-88, 522 N.E.2d 1124, 1129-32.) In the present case, defendant has failed to preserve this issue for review since she failed to make a timely objection at trial and to raise the issue in her post-trial motion.

Illinois Supreme Court Rule 615(a), however, provides as follows: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (134 Ill. 2d R. 615(a).) "[P]lain error 'encompasses those errors which are obvious *** and which, if uncorrected, would be an affront to the integrity and reputation of the judicial proceedings.' " (*People v. Stuckey* (1992), 231 Ill. App. 3d 550, 568, 596 N.E.2d 646, 658-59, quoting Black's Law Dictionary 1035 (5th ed. 1979).) We cannot, however, review the merits of defendant's allegation pursuant to Rule 615(a) because there is no evidence that the alleged error constituted plain error.

Instead, we will review defendant's allegation pursuant to our authority granted under Illinois Supreme Court Rule 366(a)(5). (134 Ill. 2d R. 366(a)(5).) Rule 366(a)(5) provides that this court may, in the exercise of its duty to insure that a cause has a just result, ignore the doctrine of waiver and decide a case on grounds not properly raised or not raised at all by the parties. 134 Ill. 2d R. 366(a)(5); *Palomar v.*

*Metropolitan Sanitary District* (1992), 225 Ill. App. 3d 182, 188, 587 N.E.2d 1067, 1071.

Every criminal defendant has a right to testify in his own defense. (*Harris v. New York* (1971), 401 U.S. 222, 225, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643, 645.) When a defendant contends on appeal that he was precluded from testifying at trial, however, his conviction cannot be reversed on the basis that he was precluded from exercising his right to testify, unless he contemporaneously asserted his right to testify by informing the trial court that he wished to do so. *People v. Brown* (1973), 54 Ill. 2d 21, 24, 294 N.E.2d 285, 287; *People v. Knox* (1978), 58 Ill. App. 3d 761, 767, 374 N.E.2d 957, 962.

A majority of the courts in other States have held that a defendant's waiver of his right to testify is presumed if, as in the present case, he fails to testify or to notify the court of his desire to do so. *United States v. Martinez* (9th Cir. 1989), 883 F.2d 750, 760; *In re Mecier* (1983), 143 Vt. 23, 28, 460 A.2d 472, 475-76 (defendant waived his right to testify by failing to assert it before or during trial).

In addition, courts in many jurisdictions have also held that a defendant's waiver of his right to testify does not have to be incorporated in the record. *Torres-Arboledo v. State* (Fla. 1988), 524 So. 2d 403, 409-10 (the right to testify is not a right which must be waived on the record by the defendant himself); *Aragon v. State* (1988), 114 Idaho 758, 763, 760 P.2d 1174, 1179 (a waiver on the record of defendant's right to testify is not required).

In the present case, there is no evidence in the record that defendant asked the court to permit her to testify. Therefore, we hold that she waived her right to do so.

Furthermore, we find that the trial court did not have a duty to *sua sponte* advise defendant of her right to testify, or to inquire as to whether she knowingly and intelligently waived that right. *United States v. Goodwin* (7th Cir. 1985), 770 F.2d 631, 637; see also *Martinez*, 883 F.2d at 760; *United States v. Bernloehr* (8th Cir. 1987), 833 F.2d 749, 751 (the trial court does not have an affirmative duty to inquire as to why the witness did not testify); *United States v. Systems Architects, Inc.* (1st Cir. 1985), 757 F.2d 373, 375 (a trial court does not have an affirmative duty to determine whether a witness' decision to remain silent was voluntary and intelligent); *Commonwealth v. Hennessey* (1989), 23 Mass. App. Ct. 384, 389, 502 N.E.2d 943, 947 (a trial court is not required to conduct a colloquy with defendant on the record to assure that defendant has knowingly relinquished his right to testify); *Commonwealth v. Waters* (1987), 399 Mass. 708, 716, 506 N.E.2d 859, 865 (the trial judge was not required to conduct *voir*

*dire* to determine whether or not defendant waived his right to testify); *State v. Albright* (1980), 96 Wis. 2d 122, 131, 291 N.W.2d 487, 493 (trial judge does not have a duty to advise a defendant, *sua sponte*, of his right to testify).

There are several reasons why a trial judge is not required to inform a defendant of his right to testify. First, a defendant's decision as to whether or not to testify is often made as the trial unfolds. (*Waters*, 399 Mass. at 716, 506 N.E.2d at 865.) By advising a defendant of his right *to* testify, a court could influence the defendant to waive his right *not* to testify, "thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right." *Martinez*, 883 F.2d at 760; *Siciliano v. Vose* (1st Cir. 1987), 834 F.2d 29, 30.

Second, a court could intrude upon the attorney-client relationship by advising a defendant of his right to testify. (*Martinez*, 883 F.2d at 760; *United States v. Goodwin* (7th Cir. 1985), 770 F.2d 631, 637; *Commonwealth v. Hennessey* (1989), 23 Mass. App. Ct. 384, 389, 502 N.E.2d 943, 947.) "A trial judge must take great care not to assume the functions of trial counsel." (*Goodwin*, 770 F.2d at 637.) It is primarily the responsibility of defense counsel, not the trial judge, to advise a defendant as to whether or not he should testify and to explain the tactical advantages and disadvantages of each option. (*Goodwin*, 770 F.2d at 637.) If a trial judge were to advise a defendant, *sua sponte*, of his right to testify, such an act could frustrate a decision on the matter made by the defendant and defense counsel who are designing trial strategy. *Albright*, 96 Wis. 2d at 134, 291 N.W.2d at 493.

Finally, a trial judge is not required to inform a defendant of his right to testify because it is difficult for a judge to determine the appropriate time that he should advise a defendant concerning his right to testify, since "the judge cannot know that the defendant has not testified until the defense [rests and such a moment is not an opportune] time to engage in a discussion with the defendant which might lead to a rupture with defense counsel *** or might undo a trial strategy based on the defendant's not testifying." *Hennessey*, 23 Mass. App. Ct. at 389, 502 N.E.2d at 947.

Accordingly, we conclude that defendant waived her right to testify because she did not contemporaneously assert her right to do so and that the trial court in the present case did not err by failing to advise defendant of her right to testify or in failing to require that defendant's waiver of said right be incorporated in the record.

Next, defendant contends that she was not proved guilty of intent to deliver a controlled substance, bribery and official misconduct beyond a reasonable doubt. First, defendant argues that evidence of her

guilt of intent to deliver a controlled substance was insufficient because the State failed to prove beyond a reasonable doubt that defendant intended to deliver and not to personally consume the cocaine given to her by Agent Kizart.

Upon judicial review of a conviction, all evidence must be considered in the light most favorable to the prosecution. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Schorle* (1990), 206 Ill. App. 3d 748, 759, 565 N.E.2d 84, 91.) The relevant inquiry upon review of the sufficiency of the evidence of a defendant's guilt is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found that defendant committed the essential elements of the crime for which he was convicted beyond a reasonable doubt. (*Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 566, 596 N.E.2d 646, 657.) A guilty verdict will not be reversed on appeal unless it is inconclusive, improbable, unconvincing or contrary to human experience. *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; *Stuckey*, 231 Ill. App. 3d at 566, 596 N.E.2d at 657.

■ Upon considering the evidence in the light most favorable to the prosecution, we conclude that the trial court's finding that defendant was guilty of possession of a controlled substance with intent to deliver is neither inconclusive, improbable, unconvincing nor contrary to human experience. A rational jury could have found defendant guilty of the above offense beyond a reasonable doubt.

Section 401 of the Illinois Controlled Substances Act provides as follows:

"1401. Manufacture or delivery unauthorized by Act—Penalties

*** Except as authorized by this Act, it is unlawful for any person knowingly to *** deliver, or possess with intent to *** deliver, a controlled or counterfeit substance or controlled substance analog. ***

Except as provided in Section 401.1 any person who violates this Section with respect to:

(a) the following amounts of controlled or counterfeit substances or controlled substance analogs, notwithstanding any of the provisions of subsections (b), (c), (d), (e), (f) or (g) to the contrary, is guilty of a Class X felony. The fine for violation of this subsection (a) shall not be more than $500,000:

***

(2) 15 grams or more but less than 100 of any substance containing cocaine or an analog thereof ***." Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a).

In the present case, defendant told Agent Kizart that she worked as a guard in the Cook County jail and that she wanted to obtain drugs from him so that she could deliver them to Melvin. The record also shows that defendant met Agent Kizart in the parking lot of the Kentucky Fried Chicken franchise located at 75th Street and South Lafayette whereupon she obtained 16.3 grams of cocaine from him and accepted money for her services. A defendant's intent to deliver a controlled substance is necessarily established by circumstantial evidence. (*People v. Marshall* (1987), 165 Ill. App. 3d 968, 976, 521 N.E.2d 538, 543.) The record shows that defendant had knowledge of the cocaine, that it was within her immediate control and possession and that she intended to deliver it. (See *People v. Pintos* (1989), 133 Ill. 2d 286, 292, 549 N.E.2d 344, 346-47.) For the above reasons, we affirm defendant's conviction for possession of a controlled substance with intent to deliver.

Defendant supports her contention that she was not found guilty of the above crime beyond a reasonable doubt by arguing that the State failed to show that she did not intend to personally consume the cocaine since testimony established that she used drugs and that she inquired about obtaining drugs for her own personal use. Although it is plausible that defendant's discussion with Agent Kizart regarding his status as a drug dealer and the reduction in his price he offered her for each ounce of cocaine to be sold to her in exchange for taking drugs into Cook County jail was her arrangement for obtaining cocaine for her own personal use, defendant fails to acknowledge that she agreed to deliver drugs to Melvin as part of this arrangement and that she then obtained possession of 16.3 grams of cocaine.

Accordingly, we find that defendant was proved guilty beyond a reasonable doubt of the offense of possession of a controlled substance with the intent to deliver that substance.

Defendant also contends that the evidence was not sufficient to support her convictions for bribery and official misconduct because the trial judge's comments reflected uncertainty regarding her guilt and because the evidence failed to establish that Melvin was an inmate in the Cook County jail.

■ First, we find that the trial judge's comments, when considered in their totality, show that the judge was articulating and applying the proper legal principles. Defendant cites to various portions of the record to support her argument that the trial judge expressed

doubt about whether Melvin was an inmate in the Cook County jail. Defendant, however, fails to mention the following key portions of the colloquy wherein the judge stated that she was satisfied with the sufficiency of the evidence:

"THE COURT: I'm not trying to be completely unreasonable. I'm just concerned about this and I have been throughout this because I have been waiting to find out how we knew Melvin was in jail, but I don't know that it has been established to the extent that it would be recognized that Melvin is in fact in jail and I just wondered if I had missed it, if it had come in. We had quite a bit with tapes and so forth and a lot of testimony, but from the agent.

\* \* \*

THE STATE: If you look into her state of mind I don't know if it would make it any easier. The fact he proves there's a Melvin in Cook County Jail, how does that prove her state of mind?

THE COURT: If there is a Melvin on her wing and that's established it could be argued that she was acting with that in mind. I'm just throwing that out because I had that as a question. I felt this is the appropriate time to raise it because I wanted to make sure I had not missed it. You have addressed it. Do you want to finish your argument?

\* \* \*

THE STATE: [I]f he [gave] her the cocaine on the 25th and the understanding from these transcripts and their other conversations it's clear it's going to be delivered shortly after he gave it to her. And from that comment right there, that there is a mutual understanding right after he gave her this purported cocaine she's going to work, and we have what the State is referring to the code, slang for the narcotics, cookies. And the reference to Melvin, and Melvin's wing. Your Honor, it is like every other case, you can't look at one piece of evidence—.

THE COURT: I understand that. I just wanted you to point that point out to me—.

\* \* \*

At this point, again looking in the light most favorable to the State, I'm not going to grant [a directed verdict] as to any other counts. I'm going to give the benefit of the doubt. I have some questions in my mind, but looking in the light most favorable to the State I will come down on the side of the State. I

do have some questions, as indicated, however, they are not such at this point that I would grant a motion for directed finding as to the other counts."

Defendant argues that the trial judge's comment that she would evaluate the evidence at the end of the case under a stricter standard than she did upon denying defendant's motion for a directed verdict indicates that the trier of fact had a reasonable doubt with respect to defendant's guilt. Defendant's argument, however, fails in light of the applicable law.

When a defendant moves for a directed verdict, the motion will be denied if the trial judge determines that upon viewing the evidence in the light most favorable to the prosecution, a reasonable mind could fairly conclude that defendant was guilty beyond a reasonable doubt. (*People v. Withers* (1981), 87 Ill. 2d 224, 229, 429 N.E.2d 853, 856.) On the other hand, a defendant must have been proved guilty of an offense beyond a reasonable doubt at the close of the evidence. See *In re Winship* (1970), 397 U.S. 358, 361-63, 25 L. Ed. 2d 368, 374-75, 90 S. Ct. 1068, 1071-72.

Accordingly, the trial judge's comment regarding the applicable evidentiary standards was appropriate and in no way indicates that the trier of fact had a reasonable doubt regarding defendant's guilt at the close of the evidence.

■ Defendant was found guilty of bribery at the close of the evidence. The Criminal Code of 1961 makes the following pertinent provision regarding bribery:

"33—1. Bribery
 *** Bribery. A person commits bribery when:
 * * *

(d) He receives, retains or agrees to accept any property or personal advantage which he is not authorized by law to accept knowing that such property or personal advantage was promised or tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness; or

(e) He solicits, receives, retains, or agrees to accept any property or personal advantage pursuant to an understanding that he shall improperly influence or attempt to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness." Ill. Rev. Stat. 1987, ch. 38, pars. 33—1(d), (e).

Defendant argues that the State must also prove that the person to whom she was to deliver the cocaine in fact existed. This argument

defies case law. In *People v. Wright* (1982), 105 Ill. App. 3d 187, 190, 434 N.E.2d 26, 28, we held that in order for a defendant to be convicted of bribery, "[t]he statute requires only that the defendant received, retained or agreed to accept the money knowing that it was offered with the intent that it influence the defendant as public officer in the performance of an official act." In the present case, ample evidence existed from which the trial court could have reasonably concluded that defendant knew that the money she received was offered with the intent to influence her in the performance of her duties.

Upon viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that there was sufficient evidence that defendant was guilty of bribery beyond a reasonable doubt. Therefore, defendant's convictions for bribery are affirmed.

Defendant next argues that the State failed to prove that she was guilty beyond a reasonable doubt of official misconduct because the prosecution failed to show that she was going to deliver cocaine to an inmate at the Cook County jail in her official capacity, since the State never established that Melvin was an inmate. We disagree.

Section 33—3 of the Criminal Code provides as follows:

"33—3 Official misconduct

*** Official Misconduct. A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts:

***

(b) Knowingly performs an act which he knows he is forbidden by law to perform; or

(c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority; or

(d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law."

Ill. Rev. Stat. 1987, ch. 38, pars. 33—3(b) through (d).

In order to support a conviction for official misconduct, the State must also show that the law which defendant violated was specified in the indictment. *People v. Lutz* (1978), 73 Ill. 2d 204, 213, 383 N.E.2d 171, 174; *People v. Dixon* (1992), 228 Ill. App. 3d 29, 35, 592 N.E.2d 1104, 1108.

■ Upon viewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence to support defendant's convictions for bribery beyond a reasonable doubt. A rational trier of fact could have found that defendant obtained drugs pursuant to an agreement to deliver them to Melvin in her official ca-

pacity as a jail guard. Defendant does not contend that she did not know that said acts were illegal and she does not contend that the law she violated, possession of a controlled substance with intent to deliver, was not specified in the indictment. Whether or not Melvin was actually an inmate is *not* an element of the offense.

The next three issues before this court concern alleged errors made by the trial court in sentencing defendant. First, defendant contends that this cause must be remanded for a new sentencing hearing because she should not have been sentenced for any of her official misconduct convictions and should only have been sentenced for two of her bribery convictions based upon acts performed upon November 25, 1987, and December 11, 1987. Defendant also argues that her sentence for official misconduct should be vacated because the convictions for that crime were based upon the same act as her conviction for possession of a controlled substance with intent to deliver. The State concedes that defendant's sentences for bribery and official misconduct must be modified, but it maintains that this cause should not be remanded for a new sentencing hearing because there is no indication that the official misconduct convictions influenced the trial court with respect to its sentencing of defendant on the other counts. We agree.

■ In the present case, defendant was found guilty of possession of a controlled substance with intent to deliver, bribery and official misconduct. Two bribery counts are based on the single act of receipt of money on November 25, 1987, and two more are based on the single act of the receipt of money on December 11, 1987. Thus, defendant should be sentenced for one count of bribery for the November 25 act and on one count of bribery for the December 11 act.

Furthermore, the six counts of official misconduct are based on the same act as defendant's conviction for possession of a controlled substance with intent to deliver. Possession of a controlled substance with intent to deliver is a Class X felony (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a); Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(2)(3)), whereas official misconduct based on a violation of the same statute is a Class 2 felony (Ill. Rev. Stat. 1987, ch. 38, par. 33—3(d)); Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(2)(5)). Since the six counts of official misconduct are based on the same act as the act which is the basis of defendant's conviction for possession of a controlled substance with intent to deliver, the sentences for official misconduct should be vacated. See *People v. King* (1977), 66 Ill. 2d 551, 556, 363 N.E.2d 838, 844-45.

Although defendant has requested a new sentencing hearing, resentencing is not warranted in this case. When a defendant receives multiple convictions, a new sentencing hearing is not warranted when a conviction is vacated where there is nothing in the record to indicate that the vacated conviction had any effect on the other sentences. (*People v. Payne* (1983), 98 Ill. 2d 45, 55, 456 N.E.2d 44, 49; *People v. Ivory* (1985), 139 Ill. App. 3d 448, 455, 487 N.E.2d 1035, 1040.) In the present case, there is no indication that defendant's official misconduct convictions influenced the trial court when sentencing defendant for bribery and possession of a controlled substance with intent to deliver. A reviewing court cannot conclude, solely from a trial court's imposition of separate sentences for multiple convictions, that the sentence imposed for one offense has been influenced by the conviction or sentence for another offense. *People v. Martin* (1984), 121 Ill. App. 3d 196, 215, 459 N.E.2d 279, 293.

Accordingly, defendant's convictions for possession of a controlled substance with intent to deliver are affirmed, defendant's conviction for two counts of bribery is affirmed, but two of defendant's bribery convictions and all of her official misconduct convictions are vacated. Defendant's request for remandment for resentencing is denied.

Next, defendant contends both that her sentences were excessive and that she was penalized for overcrowding at Cook County jail. We find that the trial court properly sentenced defendant after a careful consideration of the facts and circumstances surrounding the offense.

■ Defendant's argument that she was penalized for overcrowding at Cook County jail does not pass muster. When considered in its proper context, the trial judge's comment on the nature and circumstances surrounding defendant's offense was permissible. The trial judge likened defendant's bringing drugs to an inmate in an overcrowded jail to throwing a match into a keg of gunpowder. The trial judge was not required to ignore the fact that it is impermissible for a correctional officer to bring drugs into a correctional facility. (See *People v. Roby* (1990), 202 Ill. App. 3d 143, 146-47, 559 N.E.2d 843, 843 (courts do not operate in a vacuum and they may take judicial notice of facts which are generally known or verifiable from accurate sources).) Even if it was improper to consider the conditions in Cook County jail when sentencing defendant, any error in so doing was harmless in light of the other factors in aggravation and mitigation considered by the trial court. (See *People v. Bourke* (1986), 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340.) Accordingly, defendant is not entitled to a new sentencing hearing on the basis of the trial judge's com-

ment concerning the propriety of her bringing drugs to inmates in a crowded jail.

■ Finally, defendant maintains that her sentences are excessive. We find that the trial court properly sentenced defendant to 12 years for possession with intent to deliver and seven years for each bribery count. A reasoned judgment as to the proper sentence to be imposed on a defendant must be based upon the particular circumstances of each individual case. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) The trial court made the statement upon sentencing defendant:

> "THE COURT: Certainly we take into account the fact that you have really accomplished quite a lot ***. Most of the people in this courtroom have little or no education, don't have much of a job and perhaps have turned to these kinds of offenses, dealing in drugs and what have you, to support themselves.
>
> You don't have that as a reason ***. I do believe that law enforcement official should be held to a standard. You have the public trust ***. So it is certainly a very tragic kind of situation because you had accomplished so much, but I do believe a sentence over and above the minimum sentence should be imposed."

The above statement reflects that the trial judge sentenced defendant after careful thought, deliberation and consideration of the nature of the crime.

Furthermore, there is no evidence that the trial court abused its discretion by sentencing defendant to excessive terms for her crimes. The sentences imposed upon defendant were within the statutory parameters for minimum and maximum sentences for the offenses for which defendant was convicted. Possession of a controlled substance with intent to deliver is a Class X felony. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a).) Section 5—8—1(a)(2)(3) of the Unified Code of Corrections provides that a defendant may be sentenced to not less than 6 years and not more than 30 years for a Class 1 felony. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(2)(3).) Bribery is a Class 2 felony. (Ill. Rev. Stat. 1987, ch. 38, par. 33—1(f).) Section 5—8—1(a)(2)(5) of the Unified Code of Corrections provides that a defendant may not be sentenced to less than three years or more than seven years for a Class 2 felony. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(2)(5).

The trial court is in the best position to determine the appropriate punishment to be imposed upon a defendant. (*Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.) A sentencing judge is vested with wide dis-

cretion in determining the appropriate sentence and this determination is to be afforded great deference on appeal and, absent an abuse of discretion, this decision will not be reversed. (*Perruquet,* 68 Ill. 2d at 154, 368 N.E.2d at 884.) For the above reasons, defendant's sentences for possession of a controlled substance with intent to deliver and two counts of bribery are affirmed.

For the aforementioned reasons, the trial court's judgment is affirmed in part and vacated in part. We affirm defendant's conviction and 12-year sentence for possession of a controlled substance with intent to deliver and defendant's convictions and seven-year sentences for two counts of bribery. Defendant's sentences for official misconduct and her remaining convictions for bribery are hereby vacated.

Affirmed in part; vacated in part.

CERDA and GREIMAN, JJ., concur.