132 F.3d 36
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Napoleon ENGLISH, Petitioner-Appellant,
v.
Thomas PAGE,[1] Respondent-Appellee.
 No. 96-2731.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 25, 1997.*
Decided Dec. 9, 1997.
Rehearing Denied Jan. 7, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 96 C 7427; Charles P. Kocoras, Judge.
 Before FAIRCHILD, CUMMINGS, and MANION, Circuit Judges.
 
 ORDER
 
 1
 Napoleon English was convicted by a jury in Illinois state court of murder and conspiracy to commit murder and was sentenced to forty years' imprisonment. He filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 which the district court denied. English appeals and we affirm. At English's trial, Sheila Wilkerson testified that late in the night of December 12, 1986, three members of the Vice Lords gang, English, Tony Campbell, and Vernon Holman, came to her apartment with a plastic bag from a shoe store and went into her bedroom. When she entered the bedroom, she saw her son playing with the barrel of a gun and saw English make a phone call. A few minutes later, the phone rang and English told the person on the other end that "they was ready and they had to wait 'till the detectives changed shifts.' " English then told Campbell to call "Babbles" (Sylvester Brown) who soon came to Wilkerson's apartment. English stated that he would take an Uzi gun and that the others should take shotguns so that they could shoot members of the Gangster Stones gang. After the four men left her apartment, she stood by the window and watched them walk to the building next door at 140 North Wood Street. Wilkerson testified that she heard gunshots and then saw the four men running from the building they had entered several minutes before.
 
 
 2
 Another witness, Stanley Stuart[2], testified that that same night, he was walking to 140 North Wood Street when he saw the victim, Larry Wallace, and spoke with him for several minutes. They both entered the lobby and Stuart took the stairs while the victim waited for the elevator. Stuart testified that he saw four men in the lobby but could not see them well because the lobby was not lit. As Stuart entered his friends's apartment on the second floor, he heard several rapid-fire gunshots, as though from an automatic weapon. After he heard the shots, he ran to the window and saw four men running from the building across a lit parking lot and playground. Stuart testified that one of the men had an Uzi in his hand.
 
 
 3
 A third witness, Vincent Brown, testifying for the defense, stated that he was in the unlit lobby of the building apparently before the shooting occurred. Brown stated that he saw the victim and four other people carrying automatic weapons, but could only identify two of them. He testified that he did not see English. After seeing the men, he ran out of the building and as he was running away, he heard rapid gun shots, and then called the police. After he returned to the building, he saw the victim lying bleeding in front of the elevators in the lobby.
 
 
 4
 A jury convicted English of murder and conspiracy to commit murder and he was sentenced to forty years in prison. After filing a direct appeal and a motion for post-conviction relief in state court, English filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 claiming prosecutorial misconduct because his conviction was obtained through perjured testimony; ineffective assistance of trial counsel for preventing English from testifying, for failing to interview available witnesses, and for failing to present a defense; that he was not proven guilty beyond a reasonable doubt; and that his sentence was excessive. The district court denied the petition, concluding that the first two claims were procedurally defaulted and, in any event, lacked merit, that sufficient evidence existed to convict him of the crime and that English's sentence was not excessive. This court granted a certificate of probable cause[3] on two issues: whether English could make a sufficient showing of actual innocence based on the affidavits of Vernon Holman and Sylvester Brown so as to allow consideration on the merits of the procedurally defaulted claim that trial counsel was ineffective in failing to call Holman and Brown as witnesses and, if so, whether Petitioner could prevail in that claim of ineffective assistance of counsel.
 
 
 5
 Despite English's failure to show cause and prejudice for the procedural default, this court may still address his ineffective assistance of counsel claim based on a fundamental miscarriage of justice, i.e., English's actual innocence. See Schlup v. Delo, 513 U.S. 298, 314-15 (1995). In order to meet the standard of demonstrating a fundamental miscarriage of justice, English must show "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 329. We conclude that English has not met this standard.
 
 
 6
 The affidavits attached to his § 2254 petition are from two of the individuals who were at the scene of the murder, Vernon Holman and Sylvester Brown. According to Holman and Brown, they were in the lobby of the building at 140 North Wood Street with English when the victim, a member of a rival gang, approached them and asked them why they were there. When the victim did not receive an adequate response, they claim that the victim hit Brown, and that Brown and Holman then shot the victim but did not intend to kill him. The affidavits of Brown and Holman state that while English was at the scene of the murder, he did not shoot the victim. Brown and Holman claim that they told police soon after the incident that English had committed the murder because they feared that they would be convicted of the crime and would be sentenced to death. Both Holman and Brown pleaded guilty to murder and each was sentenced to 25 years in prison.
 
 
 7
 If the jury had heard the testimony from Holman and Brown as described in their affidavits, the State would doubtless have impeached it with their post-arrest statements to the police. They had said the shooting was English's idea; that he had used an Uzi to kill the victim; and that the Uzi jammed when English first tried to fire it. It was improbable, at least, that a jury would have chosen to believe their later version in preference to the Wilkerson testimony, corroborated in part by Stuart, by Holman and Brown's post-arrest statements, and by trial testimony that 9 millimeter bullets and bullet fragments from an automatic weapon were found at the scene and in the victim's body.
 
 
 8
 Even if we were permitted to review his ineffective assistance of counsel claim, English has failed to show that counsel was constitutionally inadequate. In order to succeed on his ineffective assistance of counsel claim, English must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687 (1984). There is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id. at 689. English has not satisfied either of the Strickland prongs.
 
 
 9
 First, English has not shown that his lawyer's performance was deficient. As part of its motion to dismiss English's supplemental post-conviction petition in which English first offered the affidavits by Holman and Brown, the State included an affidavit from English's trial attorney. In the affidavit, counsel states that he "was never informed, by any person, prior [to] or during petitioner's trial, that Vernon Holman and Sylvester Brown would testify that petitioner did not carry or fire a weapon the morning Larry Wallace was shot." R. 20, Affidavit of Maurice Scott, p 5. He states further that his "information and knowledge at all times prior and during petitioner's trial was that Vernon Holman and Sylvester Brown's testimony implicated petitioner in the shooting of Larry Wallace and was not exonerating." Id. at p 6. Although Holman's first affidavit[4] states that he told English's lawyer that English did not shoot the victim, we note that the second affidavit from September 1994 does not include any such statement. Further, both of Brown's affidavits state only that he told his own defense counsel that English did not shoot the victim, and do not state that he also told English's lawyer. In addition, counsel logically could have concluded that Brown's and Holman's testimony would do more harm than good given their incriminating post-arrest statements.
 
 
 10
 English also claims in his appellate brief that counsel was ineffective for failing to permit him to testify. This court did not include this claim in its certificate of appealability, but as we noted above, the certificate should have been styled a "certificate of probable cause" because the petition was filed before the effective date of the Act. As a certificate of probable cause, the issues on which English is permitted to appeal are not limited. We conclude, however, that the claim was procedurally defaulted, and, in any event, lacks merit. As the Appellate Court of Illinois noted in its decision affirming the denial of post-conviction relief, English failed to make desire to testify known to the trial court and thus "waived" the right. See Illinois v. Shelton, 624 N.E.2d 1205 (Ill.App.Ct.1993); see also Hogan v. McBride, 74 F.3d 144, 146 (7th Cir.1996) ("[F]ailure to present a claim at the time, and in a way, required by the state is an independent state ground of decision, barring review in a federal court.").
 
 
 11
 Although English asserts he could have provided testimony rebutting Sheila Wilkerson's testimony that she saw English at her apartment on the night of the crime with the weapons used in the murder, he at no time indicates that his testimony would have exonerated him of the crime. Finally, we note that trial counsel stated in his affidavit attached to the State's motion to dismiss his supplemental petition for post-conviction relief that he discussed the possibility of testifying with English and that English "was in agreement with the decision not to testify and so chose." R. 20, Affidavit of Maurice Scott, p 7.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Since filing his petition for habeas corpus relief under 28 U.S.C. § 2254, English has been transferred to Menard Correctional Center and is now in the custody of Thomas Page
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir. R. 34(f)
 
 
 [2]
 We note that Stanley Stuart's name is also spelled "Stewart" in certain parts of the record. We use the spelling provided by the state in its brief on appeal
 
 
 [3]
 Although styled as a certificate of appealability, it is properly named a certificate of probable cause because the petition for habeas corpus relief was filed before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("the Act"), April 24, 1996. Lindh v. Murphy, 117 S.Ct. 2059, 2068 (1997). Under the pre-Act standard, we review the state trial and appellate courts' factual determinations as presumptively correct and the pertinent legal questions de novo. See Lieberman v. Washington, Nos. 95-3179 & 95-3194, slip op. at 11 (7th Cir. Oct. 27, 1997)
 
 
 [4]
 English has submitted two different versions of Brown and Holman affidavits. One set, signed in 1991, was attached to his petition for post-conviction relief The second set, signed in 1994, was attached to his petition for habeas corpus relief under 28 U.S.C. § 2254. Both sets state that English did not shoot the victim, though he was at the scene of the crime. However, some differences do exist. For example, while the first set does not provide a reason why the affiants allegedly lied in their post-arrest statements when they blamed English for the murder, the second set states that it was the fear that they would be convicted and would receive the death penalty. Any differences which we found significant between the two sets of affidavits are discussed in the text of this order