NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion to

request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The official copy of the following opinion

will be published by the Supreme Court's Reporter of Decisions in the Official Reports advance

sheets following final action by the Court.

                                    

               Docket No. 77695--Agenda 1--November 1996.

     THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAVID SMITH,

                               Appellant.

                      Opinion filed March 20, 1997.

                                    

     JUSTICE HARRISON delivered the opinion of the court:

     Defendant, David Smith, was convicted following a jury trial

in the Cook County circuit court of first degree murder, aggravated

criminal sexual assault and home invasion arising from the March

17, 1987, stabbing death of Lisa Ferguson. At a separate sentencing

hearing, the same jury found defendant eligible for the death

penalty and found that there were no factors in mitigation

sufficient to preclude imposition of the death sentence.

Accordingly, the trial court sentenced defendant to death for the

murder conviction and to concurrent terms of 30 years each for the

aggravated criminal sexual assault and home invasion convictions.

     On review, this court affirmed defendant's convictions, but

found that the trial court's refusal to "life-qualify" the jury

amounted to a violation of defendant's due process rights requiring

vacation of the death sentence and a remand of the cause for a new

sentencing hearing. People v. Smith, 152 Ill. 2d 229 (1992). The

evidence presented at defendant's trial and original sentencing

hearing is set forth in that opinion in detail. Therefore, only the

facts necessary for understanding and adjudicating the issues in

the present appeal will be discussed.

     On remand, the trial court, after a new sentencing hearing,

reimposed the death penalty for defendant's murder conviction. The

sentence of death has been stayed pending direct review by this

court. Ill. Const. 1970, art. VI, §4(b); 134 Ill. 2d Rs. 603,

609(a). Defendant argues on appeal that numerous errors committed

during both the eligibility and penalty phases of his capital

resentencing deprived him of the right to a fair sentencing

hearing. We first address those he cites that are associated with

the eligibility phase.

     Defendant initially contends that his waiver of a jury for

purposes of sentencing was not knowing, intelligent or voluntary

because he was not specifically advised that he was entitled to

have a jury determine his eligibility for the death penalty. The

record shows that, prior to the sentencing hearing, the trial court

admonished defendant as follows:

               "THE COURT: *** [Defendant], you understand that you

          have a right to have a jury make a determination as to

          the sentencing in this case.

               Do you understand that?

               [DEFENDANT]: Yes, sir.

               Q. And you may, if you so choose, give that ***

          right up and have a judge, in this case that would be

          myself [sic], make that determination.

               Do you understand that?

               A. Yes, sir.

               Q. In other words, that would be the difference

          between having a jury of twelve people hearing the facts

          of this case, hearing these matters, and then deciding

          all of them, twelve to zero, whether--with regards [sic]

          to the death penalty, whether that sentence should be

          imposed.

               Do you understand that?

               A. Yes, sir, I do.

               Q. That right cannot be taken away from you. You

          must knowingly waive that right.

               Do you understand that?

               A. Yes, sir.

               Q. Do you wish to have a jury make that

          determination, or do you wish to have a judge decide?

               A. I wish at this time to have the judge decide."

Defendant also executed a written waiver of jury sentencing.

     Defendant argues that despite these oral and written

precautions, his waiver of his right to a jury was not knowing,

intelligent or voluntary because the trial court did not admonish

him as this court recommended in People v. Albanese, 104 Ill. 2d

504 (1984). We disagree. It is true that the Albanese court stated:

          "[W]e suggest to trial judges that it would be preferable

          if, before accepting a jury waiver at a capital

          sentencing hearing, they would inform defendants that a

          sentencing jury would have to unanimously decide that the

          State has proved beyond a reasonable doubt the existence

          of a statutory aggravating factor and that there are not

          sufficient mitigating factors established to preclude the

          death sentence." Albanese, 104 Ill. 2d at 536.

However, it is sufficient for a valid jury waiver that the trial

court explain to the defendant that he is waiving his right to have

a jury consider the capital sentencing issues and that the

sentencing decision would, therefore, be made by the court alone.

People v. Haynes, 174 Ill. 2d 204, 252 (1996); People v. Ramey, 152

Ill. 2d 41, 59 (1992).

      Although it is "preferable" for the court to admonish a

defendant regarding the specific rights he is waiving at each stage

of capital sentencing, this court ultimately held in Albanese that

the sixth amendment requires no precise formula for determining

whether a waiver has been knowingly and intelligently made, and

that each case will turn on its own facts and circumstances.

Albanese, 104 Ill. 2d at 535-36; see also People v. Strickland, 154

Ill. 2d 489, 517 (1992) (there is no fixed formula that must be

recited by the court prior to receiving a defendant's valid jury

waiver at a capital sentencing hearing). Here, the record shows the

trial court admonished defendant that he had a right to have a jury

make the sentencing determination, that, after hearing "these

matters," the jurors would have to decide unanimously whether the

death sentence should be imposed, and that if defendant chose to

give up that right, a judge would make the sentencing

determination. Defendant stated that he understood the consequences

of his waiver. Additionally, we find it significant that defendant

had originally been convicted of murder and sentenced to death by

a jury, and thus was familiar with the jury's function in a capital

sentencing hearing. See Albanese, 104 Ill. 2d at 536. Therefore, we

are satisfied that the facts and circumstances of this case

demonstrate that defendant's waiver was knowing, intelligent and

voluntary.

     Defendant next argues that he was denied effective assistance

of counsel at his sentencing hearing because defense counsel

misunderstood the eligibility issue and accordingly did not contest

defendant's eligibility for the death penalty. In a related

argument, defendant contends that the trial court improperly found

him eligible for the death penalty where the State did not prove

and the court did not find the element of intent as required under

section 9--1(b)(6) of the Criminal Code of 1961 (720 ILCS 5/9--

1(b)(6) (West 1994)).

     At resentencing, the State asked the court to take judicial

notice that the jury had convicted defendant of murder, aggravated

criminal sexual assault and home invasion, and that, given his

birth date of June 26, 1963, defendant was over the age of 18 at

the time of the offenses. The State requested that "[b]ased on

those two findings," defendant be found eligible for the death

penalty. The following colloquy then occurred:

               "THE COURT: Do you have any objection to me taking

          judicial notice of those facts?

               [DEFENSE COUNSEL]: Judge, my understanding of the

          opinion is that the sentencing--or the eligibility is not

          an issue. It's merely the sentencing."

The court then took judicial notice of those facts and found,

"pursuant to the provisions of the statutes, [defendant] is

eligible for the death penalty."

     We agree with defendant that his counsel evidently believed,

incorrectly, that the resentencing ordered by this court based upon

Morgan v. Illinois, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct.

2222 (1992), was limited to the second phase of the proceeding. In

People v. Johnson, 159 Ill. 2d 97, 134-35 (1994), we held that

there was no distinction between the two stages of sentencing for

purposes of the Morgan doctrine, because "the jury involved in any

aspect of the death sentencing procedure must be fair and

impartial." Thus, on remand, defendant clearly had a right to both

stages of the hearing. However, we find that under the

circumstances present herein, counsel's mistake as to the law did

not deny defendant a fair sentencing hearing, because the trial

court properly determined defendant's eligibility and the outcome

of the hearing would not have differed had defense counsel

contested the point.

      "For the purposes of imposing the death sentence, it is

incumbent upon the sentencer to determine whether an aggravating

factor exists." People v. Johnson, 149 Ill. 2d 118, 156 (1992).

Section 9--1(b)(6) sets forth the elements of the statutory

aggravating factor of murder in the course of another felony, and

includes the requirement that the defendant acted with the intent

to kill or with the knowledge that his acts created a strong

probability of death or great bodily harm. 720 ILCS 5/9--1(b)(6)(b)

(West 1994); Johnson, 149 Ill. 2d at 156. Defendant argues, as did

the defendant in Johnson, 149 Ill. 2d at 156, that the trial court

failed to make any finding that he, in performing the acts which

caused the victim's death, acted with the necessary intent.

Specifically, defendant argues that proof that he was convicted of

murder, aggravated criminal sexual assault and home invasion and

that he was over 18 at the time of the murder is insufficient to

establish his eligibility for the death penalty. However, defendant

was indicted and proceeded to trial on, inter alia, two counts of

first degree murder alleging the mental states of intent or

knowledge (Ill. Rev. Stat. 1987, pars. 9--1(a)(1), (a)(2)), and the

jury returned a general verdict of guilty on the murder charge. See

People v. Thompkins, 121 Ill. 2d 401 (1988) (where an indictment

contains several counts arising out of a single transaction and a

general verdict is returned the effect is that the defendant is

guilty as charged in each count). In Johnson, under strikingly

similar facts, we reasoned:

          "The jury was charged with instructions which included

          intentional murder, and a general verdict was returned.

          That raised the presumption that the jury found the

          defendant guilty of intentional murder. During the

          sentencing hearing, the trial judge took judicial notice

          of the jury's verdict. Since the verdict encompassed the

          necessary finding of intent, there was no omission on the

          part of the trial judge, and defendant's argument must

          fail." Johnson, 149 Ill. 2d at 157.

We believe Johnson to be controlling here, and hold that the trial

court made the requisite finding of intent under the statute, where

the court took judicial notice of the jury's verdict.

     Defendant cites People v. Ramey, 151 Ill. 2d 498, 545-50

(1992), wherein this court found that a jury's general verdict

would not support imposition of the death penalty because use of

the presumption that the jury found the defendant intentionally

murdered the victim would deny the defendant his right to have his

eligibility for the death penalty decided by a trial court or jury.

Defendant's reliance on Ramey is misplaced. In Ramey, the

instructions given the jury at the first stage of sentencing failed

to specify that there must be a finding that the defendant acted

with the intent required under section 9--1(b)(6)(b). Thus, this

court declined to find that the defendant's eligibility had been

established because, unlike the case before us, a statutory finding

of intent was not made at sentencing. Ramey, 151 Ill. 2d at 545-46.

     Having established that the trial court properly determined

defendant's eligibility, we examine whether defense counsel's

failure to contest that finding constituted ineffective assistance.

A defendant alleging a violation of his sixth amendment right to

effective assistance of counsel must generally meet the two-pronged

test established by the United States Supreme Court in Strickland

v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052

(1984), and recognized by this court in People v. Albanese, 104

Ill. 2d 504 (1984). Under Strickland, the defendant must show that:

(1) his counsel's performance fell below the objective standard of

reasonableness; and (2) there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding

would have been different. Strickland, 466 U.S. at 688, 694, 80 L.

Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068. A court need not

determine whether counsel's performance was deficient before

examining the prejudice suffered if it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient

prejudice. Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S.

Ct. at 2069; Albanese, 104 Ill. 2d at 527.

     As an initial matter, defendant contends that because his

counsel wholly failed to subject the prosecution's case to

meaningful adversarial testing at the eligibility stage of

sentencing, ineffective assistance of counsel can be presumed

without application of the Strickland test. See United States v.

Cronic, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984).

Defendant argues that counsel's concession of his eligibility for

the death penalty is equivalent to the concession of a defendant's

guilt that this court held constituted ineffective assistance of

counsel in People v. Hattery, 109 Ill. 2d 449 (1985). However, the

facts in the instant case are clearly distinguishable from those in

Hattery. The concession by counsel in this case occurred at the

sentencing hearing, not during the opening arguments at trial.

"Thus, unlike Hattery, the question of defendant's guilt or

innocence in this case had previously been `presented to the jury

as an adversarial issue.' " People v. Holman, 132 Ill. 2d 128, 160

(1989), quoting Hattery, 109 Ill. 2d at 464. Rather, here, as in

Holman, counsel merely conceded the undisputed fact of defendant's

murder and felony convictions. We therefore reject defendant's

claim that his counsel's concession of eligibility constituted

ineffective assistance under Hattery. See Holman, 132 Ill. 2d at

160-61.

     We similarly find that counsel's mistaken belief that

eligibility was "not an issue" did not constitute ineffective

assistance under Strickland. "An error by counsel, even if

professionally unreasonable, does not warrant setting aside the

judgment of a criminal proceeding if the error had no effect on the

judgment." Strickland, 466 U.S. at 691, 80 L. Ed. 2d at 696, 104 S.

Ct. at 2066. Defendant contends that his counsel was ineffective

because, at the eligibility stage, he failed to argue that

defendant did not have a culpable mental state, yet later presented

evidence that defendant was under the influence of alcohol and

narcotics and may have experienced a transient psychotic episode at

the time of the murder. In People v. Shatner, 174 Ill. 2d 133

(1996), we recently rejected this argument raised by a defendant

whose counsel, under similar circumstances, declined to make an

opening statement in the eligibility phase, presented no evidence,

and made no argument against a finding of eligibility. There, the

sentencing court, after taking judicial notice of its presence when

the jury returned a general verdict of guilty to the charges of

first degree murder, armed robbery and arson, ruled that the

defendant was eligible for the death penalty under section 9--

1(b)(6). We held that defense counsel's actions were not

ineffective, because the defendant could not show, under the second

prong of Strickland, that there was a reasonable likelihood that,

but for counsel's inaction, the result of the eligibility

proceeding would have been different. Shatner, 174 Ill. 2d at 150.

               "Johnson undermines defendant's claim that, had his

          attorney challenged his eligibility, the sentencing judge

          would have found that he lacked the requisite intent

          under the aggravating felony murder factor and was not

          eligible for the death penalty. *** Since the jury

          verdicts encompassed the necessary finding of intent, and

          since the trial judge took judicial notice of these

          verdicts, his conclusion that defendant acted with the

          requisite intent to be eligible for the death penalty

          cannot be assailed." Shatner, 174 Ill. 2d at 150-51.

     Moreover, we note that the trial court herein heard the

evidence defendant presented at trial and sentencing concerning his

alcohol and narcotics ingestion and "psychotic episode" on the

night of the murder, and rejected the notion that defendant's

mental condition had any effect on his criminal conduct. Prior to

handing down defendant's sentence, the court stated: "There is as

we referred to mitigation offered. The question is, is it

sufficient. Mr. Smith, you lost control. You lost control not

because in our mind of any mental condition, not because of any

disease. You just went out of control." Thus, as we stated in

Shatner:

               "From these comments, it is apparent that

          defendant's contention that his eligibility hearing might

          have been different had his counsel contested eligibility

          is speculative at best. Defendant thus cannot satisfy the

          prejudice prong of the Strickland test, and his claim of

          ineffective assistance of counsel at the eligibility

          phase must be rejected." Shatner, 174 Ill. 2d at 151.

     We next consider defendant's assertions of error with regard

to the second phase of his capital sentencing hearing. Defendant

first argues that he is entitled to a new sentencing hearing

because the record does not reflect that he waived his right to

testify. The State responds that defendant has waived appellate

review of this issue and, alternatively, that defendant's

contention is without merit. We agree with both the State's

arguments.

     Section 9--1(e) of the Criminal Code of 1961 allows the

defendant to testify at his capital sentencing hearing. 720 ILCS

5/9--1(e) (West 1994); People v. Gaines, 88 Ill. 2d 342, 376

(1981). However, in the case at bar, the record shows that at no

time during the hearing did defendant indicate a desire to testify

in his own behalf. Nor did defendant raise this matter in his post-

sentencing motion. Thus, defendant has waived this issue for

purposes of appellate review. People v. Enoch, 122 Ill. 2d 176

(1988). Notwithstanding defendant's waiver, we choose to address

the merits of this issue. See People v. Shelton, 252 Ill. App. 3d

193, 200 (1993); People v. Raso, 234 Ill. App. 3d 1099, 1100-01

(1992).

     Defendant urges that this court adopt the holding of a small

minority of jurisdictions which have required a defendant's waiver

of the right to testify to be on the record. See Tachibana v.

State, 79 Haw. 226, 900 P.2d 1293 (1995); Annotation, Necessity

That Waiver of Accused's Right to Testify in Own Behalf Be on the

Record, 90 A.L.R.4th 586 (1991). Illinois courts have consistently

found, however, that when a defendant contends on appeal that he

was precluded from testifying at trial, his conviction cannot be

reversed on the basis that he was prevented from exercising that

right unless he contemporaneously asserted his right to testify by

informing the trial court that he wished to do so. See People v.

Thompkins, 161 Ill. 2d 148, 177-78 (1994); People v. Brown, 54 Ill.

2d 21, 24 (1973); Shelton, 252 Ill. App. 3d at 201; Raso, 234 Ill.

App. 3d at 1100; People v. Knox, 58 Ill. App. 3d 761, 767-68

(1978). Indeed, a vast majority of the states considering this

question have held that a defendant's waiver of his right to

testify is presumed if, as in the present case, he fails to testify

or notify the court of his desire to do so. See Shelton, 252 Ill.

App. 3d at 201, citing United States v. Martinez, 883 F.2d 750, 760

(9th Cir. 1989), vacated on other grounds, 928 F.2d 1470 (9th Cir.

1991).

     Additionally, a majority of jurisdictions, and our own

appellate court, have found that a trial court has no duty to

advise a defendant, represented by counsel, of his right to

testify, nor is the court required to ensure that an on-the-record

waiver has occurred. Shelton, 252 Ill. App. 3d at 201; Raso, 234

Ill. App. 3d at 1102; see also Martinez, 883 F.2d at 760. Although

such procedures are required to establish a valid jury waiver (725

ILCS 5/103--6 (West 1994)) or a voluntary guilty plea (725 ILCS

5/113--4(c) (West 1994); 134 Ill. 2d Rs. 402, 605), there is no

need for a comparable requirement that the trial court set of

record defendant's decision on this matter. As the Martinez court

stated:

               "At least seven reasons have been given for this

          conclusion: First, the right to testify is seen as the

          kind of right that must be asserted in order to be

          recognized. [Citation.] Second, it is important that the

          decision to testify be made at the time of trial and that

          the failure to testify not be raised as an afterthought

          after conviction. [Citation.] Third, by advising the

          defendant of his right to testify, the court could

          influence the defendant to waive his right not to

          testify, `thus threatening the exercise of this other,

          converse, constitutionally explicit and more fragile

          right.' [Citation.] Fourth, a court so advising a

          defendant might improperly intrude on the attorney-client

          relation, protected by the Sixth Amendment. [Citation.]

          Fifth, there is danger that the judge's admonition would

          introduce error into the trial. [Citation.] Sixth, it is

          hard to say when the judge should appropriately advise

          the defendant--the judge does not know the defendant is

          not testifying until the defense rests, not an opportune

          moment to conduct a colloquy. [Citation.] Seventh, the

          judge should not interfere with defense strategy.

          [Citation.]" (Emphasis in original.) Martinez, 883 F.2d

          at 760.

For all these reasons, we join the majority of states in concluding

that the trial court is not required to advise a defendant of his

right to testify, to inquire whether he knowingly and intelligently

waived that right, or to set of record defendant's decision on this

matter.

     Here, defendant does not assert that his counsel was

ineffective for advising him to refrain from testifying at

sentencing, nor does he indicate of what his testimony would have

consisted. We recognize that the decision whether to take the

witness stand and testify in one's own behalf ultimately belongs to

the defendant (Thompkins, 161 Ill. 2d at 177; Brown, 54 Ill. 2d at

23), but it should be made with the advice of counsel (Brown, 54

Ill. 2d at 23-24; Raso, 234 Ill. App. 3d at 1101-02). Thus, in the

instant case, defendant's decision not to testify must be viewed as

strategy with which he agreed. See Thompkins, 161 Ill. 2d at 177;

Raso, 234 Ill. App. 3d at 1101. Accordingly, we conclude that

defendant waived his right to testify because he did not

contemporaneously assert his right to do so and that the trial

court did not err by failing to advise defendant of his right to

testify at sentencing or by failing to require that defendant's

waiver of the right be incorporated in the record. See Shelton, 252

Ill. App. 3d at 202; Raso, 234 Ill. App. 3d at 1101-02.

      Defendant next contends that the trial court erred in relying

on its notes from the original sentencing hearing without informing

defense counsel. Richard Rizzo, a Cook County sheriff's office

employee assigned to the Cook County jail, testified for the State

in aggravation at both defendant's original sentencing hearing in

1989 and at the 1994 resentencing hearing which is the subject of

this appeal. In 1994, Rizzo testified that he discovered a shank in

a cell occupied by defendant and another inmate, and that defendant

admitted it was his. During closing arguments, defense counsel

stated that defendant denied ownership of the shank. In rebuttal,

the State argued that defendant had admitted the shank was his and

defense counsel objected, stating there was no such evidence. The

trial court commented that it did not recall whether defendant

admitted or denied ownership of the shank. The court then stated:

          "I just happen to have my notes which indicate as long as

          this has been brought out. It talks about him--and I

          believe his name was officer Rizzo *** recovered a shank

          from the defendant's cell, questioned both inmates.

               I guess [defendant] was there with another man named

          *** Rollins--never saw the defendant attack anybody or

          use the shank. He indicated the defendant denied that it

          was his shank.

               And then it goes on. Redirect. He was found guilty

          of an offense and was sanctions [sic] for that."

     Defendant argues that the notes referred to by the trial court

do not reflect Rizzo's testimony at the 1994 hearing, but his "more

extensive and more aggravating" testimony at the 1989 hearing. We

agree that the record on appeal, which includes a transcript of

proceedings at both sentencing hearings (134 Ill. 2d R. 608),

supports defendant's claim. In 1994, Rizzo did not testify that

defendant denied it was his shank, was found guilty of an offense,

or was sanctioned for it. Nor was Rizzo subject to redirect at the

1994 hearing. Therefore, where the trial court's notes reflect

proceedings which occurred in 1989 but not in 1994, we will presume

for purposes of this appeal that the trial court was referring to

its notes from the original sentencing hearing.

     While the State argues that defendant has waived this issue on

appeal, we find that his failure to object to the court's use of

its notes is excused where defense counsel did not know at the time

that the court was referring to notes from the original sentencing

hearing. Although defendant also failed to include the court's

reference to the 1989 notes as error in his post-sentencing motion,

application of the waiver rule is less rigid where the basis for

the objection is the trial court's conduct. People v. Nevitt, 135

Ill. 2d 423, 455 (1990). We choose, therefore, to examine this

issue on the merits.

               "The law is well settled that, exclusive of certain

          matters of which the court may take judicial notice, the

          deliberations of the trial judge are limited to the

          exhibits offered and admitted in evidence and the record

          made before him in open court. Any private investigation

          by the court *** constitutes a denial to the defendant of

          the constitutional guarantee of due process of law."

          People v. Rivers, 410 Ill. 410, 416 (1951).

Further, if an accused is not informed at trial of the facts of

which the court is taking judicial notice, he does not know upon

what evidence he is being convicted, and he is deprived of any

opportunity to challenge the deductions drawn from such notice or

to dispute the truth of the facts allegedly relied upon. Garner v.

Louisiana, 368 U.S. 157, 173, 7 L. Ed. 2d 207, 219, 82 S. Ct. 248,

256-57 (1961). Thus, in the case at bar, the trial court erred in

relying on notes from the previous sentencing hearing without

informing the defense. The court's brief reference to "my notes"

was insufficient to inform the defense that the court was taking

judicial notice of testimony presented at a prior proceeding, and

thus counsel had no opportunity to challenge any deductions which

might be drawn from such testimony or to dispute its truth.

     However, we do not believe this error deprived defendant of

due process for several reasons. First, defendant was not

prejudiced by the court's reliance on Rizzo's original testimony

that defendant had denied ownership of the shank, because the

court's notes mirrored what defense counsel maintained during

closing argument. Defense counsel argued that the shank was never

in defendant's actual possession and that he denied that it was

his. The court, after referring to its notes, concurred with

defense counsel. Additionally, our review of the record reveals

that the trial court's isolated reference to its notes was

inconsequential and had no effect on the sentence it imposed on

defendant. Thus, where defendant has failed to demonstrate that he

would not have received the death sentence absent the court's

reliance on its notes, we consider the court's error to be

constitutionally insignificant. See People v. Byron, 164 Ill. 2d

279, 304 (1995) (trial court's reliance on allegedly incorrect

statements in presentence report concerning capital defendant's

drug use was constitutionally insignificant where defendant denied

accuracy of report and court's comments on matter were isolated).

     Defendant next contends that the trial court erred in

considering that the jury in the original proceedings had sentenced

defendant to death. During closing argument at defendant's

resentencing hearing, the State urged the court to consider that

essentially the same evidence had been presented to the jury in

1989 and that the jury had returned a sentence of death. A defense

objection was overruled. In his post-sentencing motion, defendant

alleged that the State erred in referring to the jury's finding in

the first sentencing hearing and in arguing that "the same

essential evidence was balanced by 12 people." At the hearing on

defendant's motion, defense counsel responded as follows to the

State's position that the references to the jury's finding were

"proper": "[T]he State is arguing that somehow the jury's

determination has a legitimate place in this Court's determination.

That's wrong, Judge. That jury determination was thrown out by the

Supreme Court. It has no validity in any aspect in this courtroom."

We agree.

     This court vacated the sentence of death originally imposed on

defendant because the trial court's refusal to "reverse-

Witherspoon" or "life-qualify" the jury, over defendant's

objection, amounted to a due process violation. Smith, 152 Ill. 2d

at 274. "It is elemental that the vacatur of a sentence renders the

sentence null and void and of no legal effect." People v. Brooks,

158 Ill. 2d 260, 274 (1994). Further, as the United States Supreme

Court has stated:

          "Although we have acknowledged that `there can be "no

          perfect procedure for deciding in which cases

          governmental authority should be used to impose death," '

          we have also made it clear that such decisions cannot be

          predicated on mere `caprice' or on `factors that are

          constitutionally impermissible or totally irrelevant to

          the sentencing process.' [Citation.]" Johnson v.

          Mississippi, 486 U.S. 578, 584-85, 100 L. Ed. 2d 575,

          584, 108 S. Ct. 1981, 1986 (1988).

     Here, because the jury's sentence had been vacated and was "of

no legal effect," it was an irrelevant factor in the resentencing

process. Thus, the State's argument urging the trial court to

consider the prior death sentence was improper and the court's

failure to sustain defendant's objection to that argument was

error. However, we do not agree with defendant that a new

sentencing hearing is necessary, where it is apparent from the

record that the trial court did not rely on the improper argument

in determining to impose the death penalty. "The rule that this

court will `not lightly overturn the findings of the trial court,

particularly when they are amply supported by the record,' applies

to findings made during the aggravation and mitigation phase of the

death penalty hearing. [Citations.]" People v. Christiansen, 116

Ill. 2d 96, 122-23 (1987).

     In the case at bar, the record clearly indicates that the

trial court relied on only proper evidence in sentencing defendant.

In pronouncing sentence, the court noted that it had reviewed its

notes, the exhibits which had been offered and admitted, the

transcripts from the prior proceedings and the doctors' reports.

The court then stated that it had also considered the testimony of

the witnesses presented in aggravation and mitigation, the offenses

defendant had been found guilty of committing, and its own finding

that defendant was eligible for the death penalty. The court

further stated that it had considered the facts of the case,

concluding: "In our view--and we have now seen a fair number of

cases, this is in our mind *** an exceptionally brutal case." The

court then noted its consideration of defendant's post-arrest

behavior and the evidence presented in mitigation and held:

"Considering the facts of the case, your conduct subsequent to the

arrest and also your conduct after conviction, we feel that the

sentence of death is appropriate; and we sentence you thereto."

     It is well established that where a sentencing hearing is

conducted before the trial court instead of a jury, the court is

presumed to consider only competent and relevant evidence in

determining sentence. People v. Ashford, 168 Ill. 2d 494, 508

(1995). This rule applies to arguments and remarks of counsel.

People v. Grodkiewicz, 16 Ill. 2d 192, 199-200 (1959). Unless it

affirmatively appears that the court was misled or improperly

influenced by such remarks and that they produced a judgment and

sentence contrary to the law and the evidence, this court will not

reverse. Grodkiewicz, 16 Ill. 2d at 200. At no point did the trial

court herein refer to the sentence imposed by the jury or, in any

way, indicate that it had influenced its sentencing decision. As we

have noted, the express findings of the trial court contained in

the record show that the court considered only the proper statutory

factors in aggravation and mitigation. Thus, we find that defendant

has failed to support his allegation that the trial court

improperly considered the jury's finding at the original proceeding

in sentencing defendant.

     Defendant next argues that the trial court erred in allowing

occurrence witness Sirena Moya to testify as a witness in

aggravation. Defendant contends that Sirena's "testimony and her

very appearance on the stand were inappropriate and overly

prejudicial" and denied him a fair and reliable death penalty

hearing. The State maintains that Sirena's presence at the scene of

the crime makes her testimony relevant and reliable, "especially

where she recognized defendant's voice from previous encounters."

     At sentencing, the State called 11-year-old Sirena as a

witness and defendant objected, arguing her testimony was not

relevant, reliable or appropriate. The trial court overruled the

objection as to relevance, and after some qualifying questions,

overruled the objection as to competency. Sirena then testified

that on March 17, 1987, she was four years old. About 5 p.m. on

that date, her parents went to a bar and left her at home with her

cousin, Lisa Ferguson. The two were watching a movie and eating

popcorn in the living room when there was a knock at the kitchen

door. Lisa got up and asked who it was and a voice said it was

Dave. Sirena recognized the voice as a friend of her father's,

David Smith, and identified defendant as that person at the

sentencing hearing.

     Sirena further testified that Lisa told defendant that she

"couldn't let him in" the apartment, and then Lisa came back and

watched the movie again. Approximately an hour later, there was

another knock at the door. Lisa asked who it was and a man's voice

said it was Lisa's brother Max. Sirena testified that she was

walking to her bedroom as Lisa opened the door. When Sirena saw

defendant at the door, alone, she "ran underneath [her] bed."

Sirena next heard Lisa screaming, then heard someone say "shut up."

Sirena testified that besides Lisa's screams coming from the

kitchen, she heard the silverware drawer shake, and then everything

went silent. About five minutes later, Sirena, still under her bed,

heard water running in the bathroom. A "police lady" then came into

her room, put a blanket over her head and took her to the next door

neighbor's home. Sirena testified that when she saw her mother, she

told her, "mommy, mommy, Lisa died." Later that night, Sirena went

to the police station and picked defendant out of a lineup.

     "Wide latitude is granted to the parties in introducing

evidence in aggravation and mitigation at a capital sentencing

hearing. The testimony presented need not satisfy the more

restrictive rules of evidence that govern the guilt-innocence

phase." People v. Tenner, 157 Ill. 2d 341, 380 (1993); 720 ILCS

5/9--1(e) (West 1994). Rather, the only requirement is that the

evidence be relevant and reliable. People v. Fair, 159 Ill. 2d 51,

89 (1994); Tenner, 157 Ill. 2d at 380. The evaluation of the

evidence's relevance and reliability lies within the sound

discretion of the sentencing judge. Fair, 159 Ill. 2d at 89;

Tenner, 157 Ill. 2d at 380. "Evidentiary rules are waived at this

stage because, in determining the appropriate sentence, the

sentencing authority must possess the fullest information possible

concerning the defendant's life, character, criminal record and the

circumstances of the particular offense." (Emphasis added.) Fair,

159 Ill. 2d at 89-90.

     Applying this authority to the case at bar, we find the trial

court did not abuse its discretion in allowing Sirena to testify.

The testimony was relevant to "the circumstances of the particular

offense," providing a vivid aural picture of the victim's terror as

defendant rummaged through the silverware in search of a weapon.

Further, although defendant does not challenge the reliability of

Sirena's testimony, we note that the trial court conducted a

preliminary in-person examination of Sirena to determine her

competence to testify, as was recommended in People v. Crews, 38

Ill. 2d 331, 338 (1967). Further, her statements were fully

corroborated by other evidence presented at the sentencing hearing.

See People v. Gosier, 145 Ill. 2d 127, 150-52 (1991) (no abuse of

discretion in admitting, at the second stage of a capital hearing,

corroborated testimony as to hearsay statements by a 3½-year-old

who was present at a homicide scene).

     Defendant further argues that the State called Sirena as an

aggravating witness to appeal to the court's sympathies, that her

appearance on the stand, "primarily as a victim of the crime," was

more prejudicial than probative, and that the State's commentary on

her testimony during closing arguments heightened the prejudicial

effect of her testimony. It is true that the State argued in

closing that Sirena's testimony was "compelling" because:

          "[I]t took a lot for her to get up there and recount

          this. Because not only was Lisa Ferguson a victim of this

          man, [Serina] is a victim, too. Because she has to go

          through her life remembering this.

               To be subject to such a horrible, horrendous crime

          at the age of four and have to live with it for the rest

          of your life, your Honor, is outrageous."

However, this court has ruled that certain victim impact evidence

may be admitted during the sentencing phase, reasoning that it is

relevant to a consideration of the appropriate punishment for a

capital defendant for the sentencing authority to have before it

evidence of the specific harm caused by the defendant. People v.

Hobley, 159 Ill. 2d 272, 316 (1994); People v. Howard, 147 Ill. 2d

103, 158 (1991). Therefore, although evidence of any psychological

trauma suffered by Sirena would be more appropriately addressed by

an expert witness rather than by Sirena herself (see People v.

Pavlovskis, 229 Ill. App. 3d 776, 783 (1992)), we decline to find

that use of her testimony as victim impact evidence was so

prejudicial that it rendered the sentencing hearing fundamentally

unfair. See Payne v. Tennessee, 501 U.S. 808, 825, 115 L. Ed. 2d

720, 735, 111 S. Ct. 2597, 2608 (1991).

     We next examine defendant's contention that the trial court

erred in considering unsupported and irrelevant factors in

aggravation. Defendant argues that the trial court exaggerated the

"primary evidence in aggravation" by commenting, in imposing

sentence, that Lisa Ferguson was stabbed "numerous times" and that

there were "in excess of 50 sites of trauma" on her body. Defendant

cites, as an additional misstatement of fact, the trial court's

comment that "there is also at least an inference that [defendant]

knew that at least one small child was there." Defendant also

argues that because defendant did not know Sirena Moya was present

at the time of the offense, the court erred in overruling

defendant's relevancy objection when the State asked a defense

witness if he was aware the murder was committed in the presence of

a small child. The State argues that defendant has waived review of

this issue, and we agree that defense counsel's objections at

sentencing are incomplete and the allegation in the post-sentencing

motion is lacking in specificity. See Enoch, 122 Ill. 2d at 186.

However, as we have noted, application of the waiver doctrine is

less rigid where the basis for the objection is the trial court's

conduct. Nevitt, 135 Ill. 2d at 455. Thus, we choose to address the

merits of the issue.

     It is clear that reliance on an improper factor in imposing

the death penalty requires resentencing because of the "profound

importance" of the trial court's role in weighing aggravating and

mitigating factors. People v. Hayes, 139 Ill. 2d 89, 154 (1990);

People v. Brownell, 79 Ill. 2d 508, 535 (1980). Our review of the

record reveals, however, that the trial court herein based its

sentence of death on evidence properly before it.

     First, the trial court's observation that defendant had

stabbed the victim "numerous times" was supported by the testimony

of the medical examiner. Dr. Nancy Jones stated that the victim had

sustained "sharp injuries," including three stab wounds and two

incised wounds. Indeed, where "multiple stab wounds with

strangulation contributing" was Dr. Jones opinion as to the cause

of death, we find no inaccuracy in the court's comment. Similarly,

the court's recollection of "in excess of 50 sites of trauma" on

the victim's body was not error where it is apparent from the

record that the "sites of trauma" were profuse. Although Dr. Jones'

testimony does not provide their exact number, she stated that, in

addition to the "sharp injuries," the victim had "numerous blunt

trauma injuries *** to the head, the trunk and the extremities."

Dr. Jones further testified: "[I]n my autopsy protocol I list about

29 separate areas of injury. There were more than 29 injuries

because in some areas I described more than one injury." The trial

court also noted defendant's own statement, made after his arrest,

that "he was glad that [the victim] had died because he didn't want

her to live remembering how bad [sic] he had beaten her." Thus, the

exact number of injuries was immaterial where that fact would not

have changed the trial court's valid conclusion, based on the

evidence presented, that this was "an exceptionally brutal case."

     Defendant further claims the trial court considered the

unsupported and irrelevant factor that defendant knew four- year-

old Sirena Moya was in the apartment at the time of the murder. In

imposing sentence, the trial court remarked: "[Defendant] broke

into the apartment of a friend to steal a VCR ***. He knew that the

victim was alone. And there is also at least an inference that he

knew that at least one small child was there." It is therefore

clear that the court considered both factual possibilities in

sentencing defendant. We see no error in this finding where,

contrary to defendant's contention, the record provides support for

both conclusions. Testimony at both defendant's trial and

sentencing established that he was a "family friend" of the Moyas.

Thus, it may be inferred that he knew the couple had a small

daughter who was not with them at the bar that evening and was

likely at home. Additionally, Sirena testified that when Lisa

Ferguson opened the apartment door, she saw defendant and then ran

and hid in her bedroom. This testimony raises the inference that

when the door opened, defendant likewise saw Sirena. The record

shows that the trial court properly weighed the evidence presented

in aggravation and mitigation.

     Defendant next argues that the trial court erred in finding

there was no competent evidence that self-defense justified

defendant's act of throwing scalding water at men on two separate

occasions while imprisoned. Defendant also contends the manifest

weight of the evidence supported his self-defense claim over the

trial court's conclusion that defendant "just went out of control."

     At the sentencing hearing, Robert Green, an officer with the

Illinois Department of Corrections assigned to the "condemned unit"

at Pontiac, testified that on May 14, 1992, he heard an inmate

named Neal yelling and saw him with his clothes wet and blisters

forming on his arms. Hot steam rose from Neal's clothing and water

dripped from the bars of defendant's cell. Green asked Neal what

happened and Neal said he "got burnt." Green then heard defendant

say, "I got the last laugh." When other officers arrived on the

scene, defendant, in anticipation of being disciplined, had his

belongings packed and was ready to move. Defendant handed his

"stinger," a coil used to heat water, to an officer. Following a

hearing on the incident, defendant received six months' segregation

and had his "grade classification" changed. Green testified that as

a standard precaution taken when an inmate is identified as a

possible victim, Neal, who had been a laundryman and free to walk

the gallery uncuffed, lost his job and was placed back in his cell

"like a regular ordinary resident of death row." Green stated that

although the incident was "no accident," no one ever learned what

the problem was between defendant and Neal.

     Brian Upchurch, another Department of Corrections officer

assigned to the condemned unit at Pontiac, testified at sentencing

that on November 11, 1992, defendant threw boiling water on him as

he walked past defendant's cell. The water, which Upchurch thought

smelled of urine, hit him on the left side of his face, neck,

shoulder, and back. Defendant told Upchurch, "Now, quit walking

around like a peacock," and stated that Upchurch was not as tough

as he thought he was. Upchurch was treated for burns, but did not

suffer any permanent disability. As defendant was being taken from

his cell to segregation, the resident in the next cell threw

boiling liquid on defendant and the officers escorting him.

     Upchurch further testified that just prior to this incident,

a condemned unit inmate named Aaron Patterson had been placed in

segregation as a result of a complaint about his monopolizing the

telephone. Upchurch stated that he did not know why Patterson would

believe that his segregation initiated with defendant and Upchurch,

and denied that defendant ever approached him in an effort to

straighten out any misunderstanding other inmates had about

defendant informing on them to Upchurch. Upchurch testified that as

a result of this scalding incident, defendant's classification was

downgraded, he was placed in segregation for a year, and he was

also prosecuted and convicted for aggravated battery.

     Dr. Lawrence Heinrich, a clinical psychologist, testified that

he was asked by defense counsel to evaluate defendant for purposes

of gathering evidence in mitigation. Dr. Heinrich reviewed various

documents, interviewed defendant and others, and administered four

psychological tests. Dr. Heinrich concluded, inter alia, that

defendant could function and adjust in the structure of an

incarcerated setting. Asked about the scalding incidents, Dr.

Heinrich stated that they were examples of "the way he was

surviving there." Dr. Heinrich distinguished inmates like

defendant, who are fearful and "counterphobic" and do things to

protect themselves, and inmates who are "overtly predatory and

aggressive." Dr. Heinrich stated that from defendant's description

of the scalding incidents, "he was attempting to protect himself

and [gain] some status with people who [sic] he felt could protect

him, and also to retaliate against a guard whom *** he perceived or

they perceived to be excessively aggressive with other inmates."

     Dr. George Savarese, a licensed clinical social worker,

testified in mitigation that he compiled a psychosocial

developmental history of defendant. Dr. Savarese reviewed various

records and documents, and interviewed defendant and other sources.

Dr. Savarese concluded, inter alia, that defendant could adapt to

incarceration. Asked about the two scalding incidents, Dr. Savarese

said it was his understanding that Neal and defendant had quarreled

and defendant believed he might be in danger. Defendant threw hot

water on Neal in order to protect himself and so that "the system

would separate them and [defendant] wouldn't have to be exposed to

[Neal] anymore." In the other instance, it was Dr. Savarese's

understanding that defendant had been labeled as a "snitch" after

another inmate was disciplined for abusing telephone privileges.

Defendant told Dr. Savarese that he tried to discuss the situation

with the guard and the guard "just laughed him off and didn't

really listen." Defendant felt that if he could get back at the

guard it would show that he was not a "snitch." Dr. Savarese

testified that the two incidents were "an aggressive way of

protecting one's self" which showed defendant's poor judgment and

heightened fearfulness, rather than any malicious or predatory

nature.

     As previously noted, in imposing sentence, the trial court

stated that on the date of the murder defendant "just went out of

control." The court continued:

               "You did not just do it on March 17, you did it

          again. You did it again on at least two occasions in our

          mind. And we don't by [sic] this, that he was a snitch

          and he was doing this to show--I don't think that was the

          case. And I don't think there is any compitent [sic]

          evidence of that."

Defendant contends that the court erred in concluding there was no

competent evidence that the scalding incidents were acts of self-

defense, where defendant's account of the incidents to Drs.

Savarese and Heinrich was credible and uncontradicted.

     Defendant cites People v. Jordan, 4 Ill. 2d 155, 163 (1954),

for the general proposition that the finder of fact cannot

disregard a defendant's version of what occurred unless it is

improbable, uncorroborated or contradicted in its material parts.

According to defendant, the court erred in not believing his

explanation and, instead, applying its own characterization to what

occurred. However, the trial court is permitted to draw reasonable

inferences from the evidence introduced during trial. People v.

Ward, 154 Ill. 2d 272, 339 (1992). Here, where the officers

testified that after throwing scalding water on his victims

defendant said, "I got the last laugh," and "quit walking around

like a peacock," a reasonable inference may be made that

defendant's actions were motivated by maliciousness and

uncontrolled anger, rather than self-defense. Thus, the trial

court's finding that defendant "just went out of control" was not

against the manifest weight of the evidence. See Christiansen, 116

Ill. 2d at 122 (supreme court will not lightly overturn trial

court's findings during aggravation and mitigation phase of death

penalty hearing).

     Further, although defendant claims that the trial court was

not free to disregard the doctors' testimony (see In re Ashley K.,

212 Ill. App. 3d 849, 890 (1991) (the circuit court cannot

disregard expert medical testimony that is not countervailed by

other competent medical testimony or medical evidence)), the

credibility and weight to be given this testimony was for the trial

court as trier of fact (People v. Oaks, 169 Ill. 2d 409, 467

(1996)). Where both Dr. Heinrich and Dr. Savarese admitted that

their interpretations of the scalding incidents came from

defendant, and we have concluded that the trial court could

reasonably reject his account based on the evidence and inferences

therefrom, we cannot say that the trial court abused its discretion

in finding there was no competent or credible evidence to support

defendant's self-defense claim. See Oaks, 169 Ill. 2d at 468.

     Defendant next contends that he was denied a fair and reliable

sentencing hearing because the trial court failed to consider in

mitigation the testimony of Josephine Palomino, defendant's former

girlfriend and the mother of his son. At sentencing, defendant

called three witnesses in mitigation and stipulated to the

testimony of four mitigation witnesses who had testified at the

original sentencing hearing. In presenting its reasons for imposing

the death penalty, the trial court stated that it had considered

"the testimony of the two individuals called in mitigation" and

included in its discussion the mitigation testimony of the two

doctors. Defendant argues that the court forgot or refused to

consider the mitigating testimony of the third witness, Palomino.

Although the State contends that defendant has waived review of

this issue by failing to make an objection at sentencing, the

record shows defense counsel attempted to preserve the issue

through its inclusion in the post-sentencing motion, and, once

again, application of the waiver rule is less rigid where the basis

for the objection is the trial judge's conduct. Nevitt, 135 Ill. 2d

at 455.

     It is clear that while the sentencer in a capital case may

determine the weight to be given relevant mitigating evidence, it

may not give such evidence no weight by excluding it from

consideration. Eddings v. Oklahoma, 455 U.S. 104, 114-15, 71 L. Ed.

2d 1, 10-11, 102 S. Ct. 869, 877 (1982); People v. Munson, 171 Ill.

2d 158, 193 (1996). Here, however, despite defendant's contentions,

we are unconvinced that the trial court failed to consider

Palomino's mitigating testimony simply because he failed to

specifically mention it in imposing sentence. This court has held

that a sentencer in a capital proceeding is not required to make

specific findings as to the aggravating and mitigating factors it

relied upon in reaching its verdict. People v. Gaines, 88 Ill. 2d

342, 383-84 (1981); People v. Brownell, 79 Ill. 2d 508, 541-44

(1980). This court has further stated:

               "Although the requirement of an explanation or

          designation by the sentencing authority of certain

          reasons necessary for imposition of the death penalty has

          been noted with approval in decisions upholding the

          validity of death penalty statutes [citations], this

          court consistently has held that a statement of findings

          is not constitutionally required in the second part of a

          sentencing hearing [citations]. Meaningful review can,

          and does, occur in its absence ***." People v. King, 109

          Ill. 2d 514, 550-51 (1986).

     In imposing sentence herein, the trial court declared several

times that it had reviewed its notes, which would encompass

Palomino's "live" testimony, and the transcripts submitted from the

prior proceeding, which would include Palomino's previous testimony

entered by stipulation. We agree with the State that the court's

failure to discuss Palomino's testimony was most likely due to the

fact that the court had considered her testimony and given it

little weight. See Jackson v. Roth, 24 F.3d 1002, 1005 (7th Cir.

1994) (the "predictable" testimony of relatives is usually

favorable and receives little weight at sentencing hearings as a

result). Thus, we find no error in the court's omission.

     Defendant next contends that the trial court improperly failed

to consider nonstatutory mitigating factors and limited the two

statutory mitigating factors it did consider. Careful examination

of the record shows, however, that the trial court weighed all of

the mitigation evidence defendant presented and found it

insufficient to preclude imposition of the death penalty. Section

9--1(c) of the Criminal Code of 1961 provides, in pertinent part:

               "The court shall consider *** any mitigating factors

          which are relevant to the imposition of the death

          penalty. *** Mitigating factors may include but need not

          be limited to the following:

                    (1) the defendant has no significant history

               of prior criminal activity;

                    (2) the murder was committed while the

               defendant was under the influence of extreme mental

               or emotional disturbance, although not such as to

               constitute a defense to prosecution." 720 ILCS 5/9-

               -1(c) (West 1994).

          In pronouncing sentence herein, the trial court made the

following comments with regard to evidence in mitigation:

               "We consider the matters which were alluded to in

          opening argument, are alluded to once again in closing

          and were testified to during those proceedings.

               Number 1, that the defendant prior to this incident

          had--there was no evidence of a prior criminal activity.

          *** [H]owever, we must temper that a little bit because

          there was at least testimony *** regarding some incidents

          of prior criminal activity at his younger years.

               We have also *** received evidence and testimony

          regarding an additional factor *** not testified to at

          the original proceeding, that being the testimony of the

          doctors regarding what they view and what they interpret

          as [defendant's] condition of a boarderline [sic]

          personalty disorder and a schizotypo *** disorder.

                                   * * *

               We do not feel there is *** any evidence of any

          mental disease. *** Maybe I ought to correct that, and

          say organic mental disease. *** [W]e just don't think

          there is any evidence of any mental disease or disorder

          caused by anything of that nature.

                                   * * *

               There is as we referred to mitigation offered. The

          question is, is it sufficient. Everyone has stresses.

          [Defendant], you lost control. You lost control not

          because in our mind of any mental condition, not because

          of any disease. You just went out of control."

     First, defendant contends that the court's comments indicate

it considered only the two statutory factors in mitigation alluded

to in defense counsel's opening statement, but not the nonstatutory

factors that were mentioned, such as the value of defendant's life

and his troubled background. We believe it is clear from a reading

of the court's comments as a whole that, in the prefatory statement

quoted above, the court meant it was considering all the mitigating

"matters which were alluded to in opening argument *** and were

testified to during those proceedings," and not just the statutory

mitigating factors which it chose to specifically mention. See

Gaines, 88 Ill. 2d at 383 (capital sentencer is not required to

make specific findings of what aggravating and mitigating factors

it relied upon in reaching its verdict).

     Second, defendant argues the trial court improperly limited

the statutory mitigating factor set forth in section 9--1(c)(1) to

"no evidence of a prior criminal activity," and indicated it was

not present in light of testimony "of prior criminal activity at

his younger years." Defendant has misinterpreted the court's

remarks, which, fairly read, properly addressed whether defendant

had "no significant history of prior criminal activity" under

section 9--1(c)(1). 720 ILCS 5/9--1(c)(1) (West 1994). Defendant

presented evidence at sentencing that he committed shoplifting and

burglary when he was 12 to 14 years of age. This court has held

that the sentencer may consider in aggravation evidence of a

defendant's prior misconduct, including juvenile delinquency,

"although the misconduct may not have resulted in prosecution or

conviction." People v. Lego, 116 Ill. 2d 323, 346-47 (1987); see

also In re W.C., 167 Ill. 2d 307, 341 (1995). Therefore, here, we

find no error where the trial court first found the presence of the

statutory mitigating factor, and then "tempered" that finding by

noting evidence of defendant's juvenile misconduct.

     Third, defendant argues the trial court improperly limited the

statutory mitigating factor set forth in section 9--1(c)(2) to

insanity arising from an organic mental disease. Dr. Savarese

testified in mitigation that defendant had a borderline personality

disorder with schizotypal features, possibly caused by either a

mental illness or brain damage. Dr. Savarese further testified

that, in his professional opinion, defendant was suffering an

extreme mental and emotional disturbance, possibly a "transient

psychotic episode," at the time he murdered Lisa Ferguson. Dr.

Heinrich testified in mitigation that defendant suffered from long-

standing emotional and personality deficiencies, the most prominent

of which were borderline personality and schizotypal personality

disorders. Dr. Heinrich concluded that these deficiencies,

exacerbated by defendant's drug and alcohol abuse, severely

impaired his judgment at the time of the murder.

     Defendant argues that the court's comments regarding the

absence of any "organic mental disease" in defendant are irrelevant

to whether the statutory mitigating factor of "extreme mental or

emotional disturbance" existed. This is true. However, it is

defendant who presented the testimony concerning the possibility of

organic disorders or brain damage. The trial court was simply

stating that it did not believe there was "any evidence" to support

a finding "of any [organic] mental disease or disorder caused by

anything of that nature." The court specifically addressed the

statutory mitigating factor when it later stated: "Everyone has

stresses. [Defendant], you lost control. You lost control not

because in our mind of any mental condition, not because of any

disease. You just went out of control." It is clear that the court

differentiated between the two separate mental condition arguments

made by defendant. We therefore find no impropriety in the court's

rejection of the section 9--1(c)(2) mitigating factor of "extreme

mental or emotional disturbance." 720 ILCS 5/9--1(c)(2) (West

1994); see Oaks, 169 Ill. 2d at 467 (although expert testimony as

to presence of statutory mitigating factor was unrebutted, the

credibility and weight to be given the testimony were for the trial

court as trier of fact).

     We next address defendant's contention that the trial court

applied an unconstitutionally vague standard in sentencing

defendant to death. In concluding its remarks, the trial court

stated: "Considering the facts of the case, your conduct subsequent

to the arrest and also your conduct after conviction, we feel that

the sentence of death is appropriate; and we sentence you thereto."

Defendant argues that the factors cited by the trial court are

nonspecific, and equate and commingle the offense for which

defendant was being sentenced with his post-offense conduct.

However, a defendant's post-offense conduct is relevant at the

aggravation-mitigation stage of a death penalty hearing (People v.

Hope, 168 Ill. 2d 1, 38 (1995)), and nothing in the record

indicates that the court further used this factor as an

unconstitutional basis for imposing the death penalty herein.

     Defendant also argues that the trial court's use of the word

"appropriate" in imposing the death penalty indicates that the

court added a "second `appropriateness' tier to the sentencing

process," a practice that this court has rejected. People v.

Albanese, 104 Ill. 2d 504, 536-37 (1984). However, it is clear from

the record that the trial court acknowledged the existence of the

two statutorily mandated phases of capital sentencing in Illinois,

and then applied both phases to the facts of defendant's case,

stating:

               "We began these proceedings with the eligibility

          phase. And based upon the convictions and also the fact

          that at the time [defendant] had attained the age of 21,

          he was eligible for the death penalty.

               As we stated, we reviewed the transcripts submitted

          to us. We have reviewed our notes. The question now

          before us is whether there are *** mitigating factors

          sufficient to preclude the imposition of the death

          penalty."

     The trial court made no mention of an additional tier, or of

a "final test." After considering the evidence in aggravation and

mitigation, the court imposed the death penalty, a sentence it

characterized as "appropriate." Rather than applying an

unconstitutionally vague standard, we interpret the court's use of

"appropriate" to mean the death penalty was "proper," "correct,"

and "suitable." Indeed, this court has found the death penalty to

be "appropriate" numerous times. See People v. Bounds, 171 Ill. 2d

1, 71 (1995); People v. Taylor, 166 Ill. 2d 414, 432 (1995); People

v. Christiansen, 116 Ill. 2d 96, 129 (1987).

     Defendant next asserts that his death sentence is "excessive,

disproportionate, and inappropriate" given his character and

history and the circumstances of the offense. We disagree. First,

with regard to defendant's claim that his sentence is

"disproportionate," we note that "[c]omparative proportionality

review in death penalty cases is not required by the United States

Constitution (Pulley v. Harris (1984), 465 U.S. 37, 79 L. Ed. 2d

29, 104 S. Ct. 871) and is not a feature of the capital sentencing

process in Illinois (People v. Jimerson (1989), 127 Ill. 2d 12,

54)." People v. Page, 156 Ill. 2d 258, 270 (1993). We therefore

decline defendant's invitation to compare the sentence in the case

before us with penalties imposed in similar cases. See People v.

Perez, 108 Ill. 2d 70, 92 (1985).

     Next, we agree with defendant that analysis of the propriety

of the death penalty requires an individualized consideration of

the circumstances of the offense and of the character and

background of the offender. Eddings v. Oklahoma, 455 U.S. 104, 110-

12, 71 L. Ed. 2d 1, 8-9, 102 S. Ct. 869, 874-75 (1982); People v.

Shatner, 174 Ill. 2d 133, 161 (1996). In deciding whether the death

penalty is excessive in a particular case, this court examines

whether the circumstances of the crime and the character of the

defendant are such that the deterrent and retributive functions of

the "ultimate sanction" will be served by its imposition. Shatner,

174 Ill. 2d at 161.

     Defendant was convicted of murder, aggravated criminal sexual

assault and home invasion. The circumstances of the offense

presented herein are that defendant went to the apartment where

Lisa Ferguson was babysitting with the intent to steal a

videocassette recorder. Defendant was denied entrance to the

apartment, but returned later with the express purpose of murdering

Ferguson. Defendant forced his way into the apartment and sexually

assaulted, stabbed and strangled Ferguson. Defendant inflicted over

30 wounds to Ferguson's body, including penetrating her anus with

his penis or the curling iron found beneath her. Additionally, the

court heard character evidence that defendant had a history of

theft, shoplifting and burglary dating back to when he was a

juvenile, although he was never convicted of any of these offenses.

Defendant also had an extensive history of drug abuse, but had

repeatedly refused drug counselling when his girlfriend urged him

to seek help. Since being incarcerated, defendant had scalded

another inmate and a correctional officer with boiling water, and

a shank was found in his cell on two occasions.

     In contrast, the evidence defendant presented in mitigation

consisted mainly of testimony that he had had a troubled childhood,

that he had a good relationship with his son, born one month after

the murder, and that at the time of the offense his judgment was

severely impaired because he was under the stress of impending

marriage and fatherhood and was suffering from emotional and

personality deficiencies which were exacerbated by his drug and

alcohol abuse. We find that the trial court's determination that

the aggravation evidence outweighed the mitigation evidence is

supported by the record. We therefore conclude that imposition of

the death penalty was not excessive or inappropriate under the

particular facts and circumstances of this case.

     Finally, defendant contends that the Illinois death penalty

statute is unconstitutional because it does not sufficiently

minimize the risk of arbitrarily or capriciously imposed death

sentences. Defendant concedes that this court has reviewed many of

the issues he raises, and has resolved them adversely to his

position. We continue to adhere to those holdings. See People v.

Cole, 172 Ill. 2d 85, 114-15 (1996) (rejecting the arguments the

statute is invalid for the discretion it affords the prosecutor in

deciding to request the death penalty in a particular case, for

failing to require the prosecution to provide the defense with

pretrial notice of the aggravating evidence to be used at capital

sentencing, or for not requiring the sentencer to make a written

statement of its findings); People v. Hooper, 172 Ill. 2d 64, 84

(1996) (rejecting the argument the statute is unconstitutional

because it does not require the sentencer to make an ultimate

determination that death is the appropriate punishment); People v.

Taylor, 166 Ill. 2d 414, 439 (1995) (rejecting the argument the

statute unconstitutionally allows the sentencer to consider "any"

aggravating factor); People v. Strickland, 154 Ill. 2d 489, 538-39

(1992) (rejecting the argument defendant has the burden of proof).

Defendant urges us to give "renewed attention" to the question of

whether the statute provides adequate judicial review. We likewise

decline to revisit this argument, having repeatedly held that the

statute provides sufficient information-gathering procedures to

insure adequate appellate review of death sentences. People v.

Bounds, 171 Ill. 2d 1, 72 (1995); People v. Albanese, 104 Ill. 2d

504, 541-42 (1984).

      Defendant also raises a question he contends this court has

not considered, namely, whether the use of the plural in the

statutory phrase "no mitigating factors sufficient to preclude the

imposition of the death sentence" prevents the sentencer from

finding a single mitigating factor is sufficient to preclude death.

(Emphasis added.) 720 ILCS 5/9--1(h) (West 1994). However, it is

well established that, in Illinois, the sentencer's belief "that

any one mitigating factor sufficient to preclude the death penalty

exists is sufficient to do so." People v. Ramey, 152 Ill. 2d 41, 77

(1992); see also People v. Brown, 172 Ill. 2d 1, 58-59 (1996). "As

such, Illinois' death penalty procedure clearly provides for

meaningful consideration of any and all mitigating factors." Ramey,

152 Ill. 2d at 77. Further, where, as here, the trial court is the

sentencer, it is presumed to know the law and apply it properly,

and its decision regarding sentencing will be presumed to be proper

absent an affirmative showing of error. See People v. Askew, 273

Ill. App. 3d 798, 805 (1995). Accordingly, defendant has raised no

arguments to persuade us to reconsider our conclusion that the

death penalty statute insures adequate safeguards to prevent the

arbitrary or capricious imposition of the penalty. See People v.

Shatner, 174 Ill. 2d 133, 162-63 (1996), citing People v. Kubat, 94

Ill. 2d 437 (1983).

     For the reasons stated, the judgment of the circuit court of

Cook County is affirmed. The clerk of this court is directed to

enter an order setting Tuesday, September 9, 1997, as the date on

which the sentence of death entered in the circuit court of Cook

County is to be carried out. The defendant shall be executed in the

manner provided by law. 725 ILCS 5/119--5 (West 1994). The clerk of

this court shall send a certified copy of the mandate in this case

to the Director of Corrections, to the warden of Stateville

Correctional Center, and to the warden of the institution where

defendant is confined.

 Affirmed.